UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY EMPLOYEES
　　UNION,

　　　　Plaintiff,

　　　　　　v.

U.S. OFFICE OF PERSONNEL
　　MANAGEMENT,

　　　　Defendant.

No. 1:25-cv-3948 (JDB)

## <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

BACKGROUND .............................................................................................................. 1

I.      Statutory and Regulatory Background ................................................................. 1

II.     Factual and Procedural Background .................................................................... 2

STANDARD OF REVIEW ............................................................................................... 4

ARGUMENT .................................................................................................................... 5

I.      OPM Conducted an Adequate Search for Records Responsive to
        NTEU'S FOIA Request ........................................................................................ 5

II.     Records Responsive to NTEU'S FOIA Request are Properly Protected Under
        Exemption 5 ......................................................................................................... 7

        A.      Exemption 5 and the Deliberative Process Privilege ............................... 11

        B.      The Agency Lists of Employee Positions Recommended to be
                Transferred to Schedule Policy/Career are Draft, Confidential, Pre-
                decisional Interagency Records................................................................. 11

        C.      Disclosure of the Responsive Records Would Harm the
                Governmental Decisionmaking Processes Protected by the
                Deliberative Process Privilege ................................................................. 13

        D.      OPM Properly Concluded that no Portion of the Responsive Records
                are Segregable .......................................................................................... 14

CONCLUSION................................................................................................................. 16

**TABLE OF AUTHORITIES**

**Cases**

*Abtew v. DHS*,
  808 F.3d 895 (D.C. Cir. 2015).................................................................................8, 12

*Assassination Archives & Rsch. Ctr. v. CIA*,
  781 F. App'x 11 (D.C. Cir. 2019) .................................................................................12

*Bigwood v. DOD*,
  132 F. Supp. 3d 124 (D.D.C. 2015) .................................................................................6

*Brannum v. Dominguez*,
  377 F. Supp. 2d 75 (D.D.C. 2005) .........................................................................11, 15

*Brayton v. Office of U.S. Trade Representative*,
  641 F.3d 521 (D.C. Cir. 2011).................................................................................4

*CACI Field Servs., Inc. v. United States*,
  12 Cl. Ct. 680 (Cl. Ct.1987).................................................................................5

*Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*,
  600 F. Supp. 114 (D.D.C. 1984).........................................................................9, 14

*Citizens for Responsibility & Ethics in Wash. v. DHS*,
  514 F. Supp. 2d 36 (D.D.C. 2007) .................................................................................9

*Coastal States Gas Corp. v. Dep't of Energy*,
  617 F.2d 854 (D.C. Cir. 1980).................................................................................12

*Cole v. Copan*,
  No. 1:19-cv-1182, 2020 WL 7042814 (D.D.C. Nov. 30, 2020)....................................15

*Corbeil v. DOJ*,
  No. 1:04-cv-2265, 2005 WL 3275910 (D.D.C. Sept. 26, 2005) .....................................7

*Covington v. McLeod*,
  No. 09- 5336, 2010 WL 2930022 (D.C. Cir. July 18, 2010).........................................15

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
  436 F. Supp. 3d 90 (D.D.C. 2019) .................................................................................13

*Dep't of Interior v. Klamath Water Users Protective Ass'n*,
  532 U.S. 1 (2001).................................................................................8, 14

*Formaldehyde Inst. v. HHS*,
  889 F.2d 1118 (D.C. Cir. 1989).................................................................................7, 8

*Frontier Found. v. DOJ,*
890 F. Supp. 2d 35 (D.D.C. 2012) ...............................................................................................10

*Gilliam v. DOJ,*
128 F. Supp. 3d 134 (D.D.C. 2015) ..............................................................................................4

*Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.,*
762 F. Supp. 2d 123 (D.D.C. 2011)..............................................................................................10

*In re Sealed Case,*
121 F.3d 729 (D.C. Cir. 1997)........................................................................................................8

*John Doe Agency v. John Doe Corp.,*
493 U.S. 146 (1989)........................................................................................................................5

*Johnson v. Exec. Off. for U.S. Att'ys,*
310 F.3d 771 (D.C. Cir. 2002).......................................................................................................5

*Jordan v. DOJ,*
591 F.2d 753 (D.C. Cir. 2020)........................................................................................................8

*Jud. Watch, Inc. v. DOD,*
No. 1:19-cv-1384, 2021 WL 270503 n.2 (D.D.C. Jan. 27, 2021).................................................14

*Jud. Watch, Inc. v. DOJ,*
365 F.3d 1108 (D.C. Cir. 2004).....................................................................................................7

*Jud. Watch, Inc. v. Exp.-Imp. Bank,*
108 F. Supp. 2d 19 (D.D.C. 2000) ...........................................................................................8, 12

*Judicial Watch, Inc. v. DOD,*
715 F.3d 937 (D.C. Cir. 2013).......................................................................................................5

*Juul Labs, Inc. v. FDA,*
731 F. Supp. 3d 46 (D.D.C. 2024) ...............................................................................................14

*Lardner v. DOJ,*
No. 03-cv-180, 2005 WL 758267 (D.D.C. March 31, 2005).........................................................5

*Light v. DOJ,*
968 F. Supp. 2d 11 (D.D.C. 2013)..................................................................................................4

*Machado Amadis v. Dep't of State,*
971 F.3d 364 (D.C. Cir. 2020).......................................................................................................8

*Mapother v. DOJ,*
3 F.3d 1533 (D.C. Cir. 1993)..........................................................................................................8

*McKinley v. Bd. of Governors of Fed. Res. Sys.*,
   849 F. Supp. 2d 47 (D.D.C. 2012) ............................................................................10, 15

*Mead Data Cent., Inc. v. Dep't of Air Force*,
   566 F.2d 242 (D.C. Cir. 1977)........................................................................................15

*Meeropol v. Meese*,
   790 F.2d 942 (D.C. Cir. 1986)..........................................................................................7

*Military Audit Project v. Casey*,
   656 F.2d 724 (1981) ..........................................................................................................4

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
   879 F.2d 873 (D.C. Cir. 1989)...........................................................................................1

*Nat'l Pub. Radio, Inc. v. FBI*,
   539 F. Supp. 3d 1 (D.D.C. 2021) ....................................................................................15

*Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs.*,
   2024 WL 810032 (D.D.C. Feb. 27, 2024).......................................................................14

*NLRB v. Sears, Roebuck & Co.*,
   421 U.S. 132 (1975)...........................................................................................................8

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990).............................................................................................7

*People for the Am. Way Found. v. Nat'l Park Serv.*,
   503 F. Supp. 2d 284 (D.D.C. 2007) ..................................................................................9

*Perry v. Block*,
   684 F.2d 121 (D.C. Cir. 1982)...........................................................................................6

*Petroleum Info. Corp. v. U.S. Dep't of Interior*,
   976 F.2d 1429 (D.C. Cir. 1992)........................................................................................14

*Pfeiffer v. CIA*,
   721 F. Supp. 337 (D.D.C. 1989) .....................................................................................10

*Rockwell Int'l Corp. v. DOJ*,
   235 F.3d 598 (D.C. Cir. 2001)...........................................................................................7

*Rosenberg v. DOD*,
   342 F. Supp. 3d 62 (D.D.C. 2018) ...............................................................................4, 13

*Rosenberg v. DOD*,
   442 F. Supp. 3d 240 (D.D.C. 2020) .................................................................................13

iv

*Russell v. Dep't of Air Force,*
   682 F.2d 1045 (D.C. Cir. 1982)..................................................................................9, 10, 13, 14

*SafeCard Servs., Inc. v. SEC,*
   926 F.2d 1197 (D.C. Cir. 1991)...........................................................................................5

*Schell v. HHS,*
   843 F.2d 933 (6th Cir. 1988) ..........................................................................................8, 9

*Schrecker v. DOJ,*
   349 F.3d 657 (D.C. Cir. 2003).........................................................................................5, 6

*Senate of Commonwealth of P.R. ex rel. Judiciary Comm. v. DOJ,*
   823 F.2d 574 (D.C. Cir. 1987)...........................................................................................8

*Shannahan v. IRS,*
   No. 08-cv-452, 2009 WL 4051078 (W.D. Wash. Sept. 3, 2009)......................................5

*Steinberg v. DOJ,*
   23 F.3d 548 (D.C. Cir. 1994)...........................................................................................5, 6

*W. Ctr. for Journalism v. IRS,*
   116 F. Supp. 2d 1 (D.D.C. 2000)......................................................................................7

*Weisberg v. DOJ,*
   745 F.2d 1476 (D.C. Cir. 1984)........................................................................................5

*Wolfe v. HHS,*
   839 F.2d 768 (D.C. Cir. 1988).................................................................................9, 10, 15

## Statutes

5 U.S.C. § 552(a)(3)..................................................................................................................1

5 U.S.C. § 552(a)(4)...............................................................................................................1, 4

5 U.S.C. § 552(a)(8)(A) ...........................................................................................................13

5 U.S.C. § 552(b) .............................................................................................................3, 4, 8, 14

## Administrative & Executive Materials

Exec. Order No. 13,957, *Creating Schedule F in the Excepted Service,*
   85 Fed. Reg. 67,631, (Oct. 21, 2020)...............................................................................2

Exec. Order No. 14,171, *Restoring Accountability to Policy-Influencing Positions Within
   the Federal Workforce,* 90 Fed. Reg. 8625 (Jan. 31, 2025) ...........................................11

**<u>Other Authorities</u>**

U.S. Office of Personnel Management, Memorandum: *Initial Implementing Guidance for Schedule Policy/Career Final Rule (Improving Performance, Accountability and Responsiveness in the Civil Service)* (Feb. 5, 2026), https://perma.cc/C7M8-UNHB ...............................................................................................11

**INTRODUCTION**

Under the Freedom of Information Act ("FOIA"), "an agency must disclose all records requested by 'any person,'" 5 U.S.C. § 552(a)(3), unless the information sought falls within a specific statutory exemption." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 874 (D.C. Cir. 1989) (citing 5 U.S.C. § 552(d)). This case involves a FOIA request for agency records submitted by Plaintiff National Treasury Employees Union ("NTEU") to Defendant, the U.S. Office of Personnel Management ("OPM"). Plaintiff's request seeks petitions received by OPM from other Executive Branch agencies identifying positions recommended by that agency to be ultimately transferred by the President (after a second recommendation by OPM) into Schedule Policy/Career pursuant to the President's Executive Order to reform the Federal workforce. OPM conducted an adequate search for the records responsive to NTEU's FOIA request. It also properly withheld disclosure of all records responsive to that request under Exemption 5 of the FOIA. Those records are exempt because they consist of draft, confidential, pre-decisional interagency recommendations by the submitting agency to OPM of positions that OPM may later recommend to the President that he transfer to Schedule Policy/Career and are therefore protected by the deliberative process privilege. This Court should thus grant summary judgment to Defendant.

**BACKGROUND**

**I. STATUTORY AND REGULATORY BACKGROUND**

The FOIA provides a person with a judicially enforceable right of access to federal agency records, unless such records are protected from disclosure by one of nine exemptions. *See* 5 U.S.C. § 552(a)(4), (b)(1)-(9). Upon receipt of a request for records, the agency must determine within twenty working days whether it will comply with the request "and shall immediately notify the person making such request of such determination and the reasons therefor[.]" *Id*. § 552(a)(6)(A)(i). After such time has expired, if the agency has not responded, the requester may bring suit in federal district court to compel production of improperly withheld records. *See id*. § 552(a)(4)(B).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

NTEU submitted a FOIA request to OPM on August 20, 2025, seeking "all petitions received by [OPM] from all agencies identifying positions within the submitting agency to be transferred into Schedule Policy/Career, as created by Executive Order 13957 and pursuant to OPM Guidance on Implementing President Trump's Executive Order titled, 'Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce' issued on Jan. 27, 2025," Am. Compl., ECF No. 18 at Ex. A. OPM acknowledged receipt of Plaintiff's FOIA requests that same day. *See* Ex. B to Am. Compl.

Plaintiff commenced this action on November 17, 2025. *See* Compl. for Decl. & Inj. Relief, ECF No. 1. Among other things, Plaintiff sought an order declaring Defendant's failure to disclose records responsive to Plaintiff's FOIA request unlawful and requiring Defendant to release responsive records within ten days. *See id*., Request for Relief, ¶¶ 1-2. Defendant answered Plaintiff's complaint on December 12, 2025, *see* Answer, ECF No. 10, and on December 13, 2025, this Court ordered the parties to submit a proposed schedule for processing and release of responsive records and/or a briefing schedule for dispositive motions, *see* Order, ECF No. 11, *as amended* Minute Order (Dec. 22, 2025), Minute Order (Jan. 16, 2026). The parties submitted a proposed briefing schedule on January 23, 2026, *see* Proposed Schedule for Production and/or Briefing, ECF No. 14, and that same day this Court ordered Defendant to complete processing of Plaintiff's request by February 27, 2026. *See* Order Setting Processing Schedule & Directing Parties to Propose Briefing Schedule, ECF No. 15.

After conducting consultations with each Executive Branch agency that sent employee lists to OPM, OPM conducted initial searches for records responsive to Plaintiff's FOIA request and sent a response to NTEU on February 26, 2026. *See* Email from Christopher Connor to Paras Shah, Feb. 26, 2026, Am. Compl, ECF No. 18 at Ex. C ("Initial FOIA Response"); *see also* Decl. of Tonya Carrington ¶ 5, attached hereto as Ex. 1 ("Carrington Decl."). The agency stated that its search had located 278 pages of records from over 40 federal agencies responsive to NTEU's

2

FOIA request. *See* Initial FOIA Response. OPM explained that it was withholding all records responsive to the request under FOIA Exemption 5 because the records consisted of confidential, pre-decisional recommendations protected by the deliberative process privilege. It also withheld a small portion of some of the records under FOIA Exemption 6 because the records contained information in which individuals have a privacy interest that was outweighed by the public interest in disclosure. *See id*. (citing 5 U.S.C. § 552(b)(5)-(6)).

NTEU filed an amended complaint on April 1, 2026, alleging that OPM's withholdings under FOIA Exemptions 5 and 6 were unlawful, and seeking disclosure of responsive records within 10 days. *See* Am. Compl., Request for Relief, ECF No. 18. OPM answered NTEU's complaint on April 13, 2026, and denied that NTEU is entitled to disclosure of the responsive records. *See* Answer to Am. Compl., ECF No. 19. On April 23, 2026, NTEU withdrew without prejudice its challenge to OPM's Exemption 6 withholdings. *See* Email from Allie Giles to James Todd, April 23, 2026, attached hereto as Ex. 2.

In April 2026, the OPM FOIA team determined that it should conduct a supplemental search to ensure that the agency's search for records responsive to Plaintiff's FOIA was adequate. *See* Carrington Decl. ¶ 8. The FOIA team coordinated with the OPM Workforce Policy and Innovation office ("OPM WPI"), the office tasked with implementing the President's Executive Order to streamline the federal workforce. OPM WPI advised the FOIA team that they had coordinated all relevant agency communications and had established a dedicated Schedule Policy/Career mailbox, transitioning from employ@opm.gov to schedule-policycareer@opm.gov. *See id*. OPM WPI further advised the FOIA team that documents were submitted either through the Schedule Policy/Career mailbox or via other agency designated systems, including secure file exchanges. *See id*. OPM WPI provided the FOIA team access to records collected from its database of about 1360 files from submissions by 74 agency Chief Human Capital Officers ("CHCOs"), or their CHCO designees, to OPM WPI. *See id*.

OPM determined that all responsive records located from the agency's searches should be

withheld in their entirety under FOIA Exemption 5 because each records consists of confidential, pre-decisional interagency recommendations about which employees to transfer to Schedule Policy/Career and prepared a *Vaughn* index describing each record by date received; sending agency; sender address (in each case from the CHCO or CHCO designee); recipient (OPM WPI); platform received (employ@opm.gov, schedule-policycareer@opm.gov, or secure file exchange); document type (*i.e.*, spreadsheet, email, or other); exemption claimed; and the agency's justification for withholding the record (*i.e.*, the record consisted of initial draft list, a revised draft list, or other draft interagency recommendation). *See id.*; OPM *Vaughn* index, attached as Ex A to Carrington Decl.

OPM now moves for summary judgment on the adequacy of its search for records responsive to NTEU's FOIA request and the propriety of its withholdings under FOIA Exemption 5.

### STANDARD OF REVIEW

"Most FOIA cases are appropriately resolved on motions for summary judgment." *Gilliam v. DOJ*, 128 F. Supp. 3d 134, 138 (D.D.C. 2015) (citing *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011)). Under FOIA, a court conducts a *de novo* review to determine whether the government properly withheld records under any of the FOIA's nine statutory exemptions. 5 U.S.C. § 552(a)(4)(B), (b)(1)-(9).

To be entitled to summary judgment, a defendant in a FOIA case must show that its "search for responsive records was adequate, that any exemptions claimed actually apply, and that any reasonably segregable non-exempt parts of records have been disclosed after redaction of exempt information." *Light v. DOJ*, 968 F. Supp. 2d 11, 23 (D.D.C. 2013) (citation omitted). The agency must also show foreseeable harm would result from the disclosure of exempt information. *See Rosenberg v. DOD*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018). In a FOIA action, summary judgment may be granted on the basis of information provided in declarations that describe "the documents and the justifications for nondisclosure with reasonably specific detail[.]" *Military*

4

*Audit Project v. Casey*, 656 F.2d 724, 738 (1981) (footnote omitted). Such declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quotation and citation omitted).[1] "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible'" to the court. *Judicial Watch, Inc. v. DOD*, 715 F.3d 937, 941 (D.C. Cir. 2013) (per curiam) (citation omitted). As the Supreme Court has emphasized, FOIA exemptions are "intended to have meaningful reach and application." *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989).

**ARGUMENT**

## I.    OPM CONDUCTED AN ADEQUATE SEARCH FOR RECORDS RESPONSIVE TO NTEU'S FOIA REQUEST

OPM is entitled to summary judgment because the agency conducted a reasonable search for records responsive to NTEU's FOIA request for agency petitions of employee positions to be transferred into Schedule Policy/Career.

To obtain summary judgment on the question of search adequacy, an agency must show that it "has conducted a 'search reasonably calculated to uncover all relevant documents.'" *Steinberg v. DOJ*, 23 F.3d 548, 551 (D.C. Cir. 1994) (citation omitted). "[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*." *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (citation omitted). Searching for records responsive to a FOIA request is a process that requires "both systemic and case-specific exercises of discretion and administrative judgment and expertise," and is "hardly an area in which the courts should attempt to micro manage the executive branch." *Schrecker v. DOJ*, 349 F.3d 657, 662 (D.C. Cir. 2003) (quoting

---

[1] "In the FOIA context, unlike the common law context, an agency is not required to submit an affidavit from an agency head or high-level agency official to invoke the deliberative process in conjunction with Exemption 5." *Shannahan v. IRS*, No. 08-cv-452, 2009 WL 4051078, at *10 (W.D. Wash. Sept. 3, 2009) (citing *Lardner v. DOJ*, No. 03-cv-180, 2005 WL 758267, at *8 (D.D.C. March 31, 2005); *CACI Field Servs., Inc. v. United States*, 12 Cl. Ct. 680, 687 n.7 (Cl. Ct.1987)).

5

*Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002)). "[A] federal agency may submit 'reasonably detailed' affidavits or declarations that describe the search performed" to demonstrate that a search for documents was reasonable. *Bigwood v. DOD*, 132 F. Supp. 3d 124, 135 (D.D.C. 2015) (citation omitted). "[I]n the absence of countervailing evidence or apparent inconsistency of proof, affidavits that explain in reasonable detail the scope and method of the search conducted by the agency will suffice[.]" *Perry v. Block*, 684 F.2d 121, 127 (D.C. Cir. 1982). OPM has done so here.

First, OPM reasonably interpreted NTEU's FOIA request for agency "petitions" received by OPM of employee positions to be transferred to Schedule Policy/Career as consisting all submissions received from each of 74 agency CHCOs or CHCO designees by the OPM WPI office (the OPM office that is coordinating the implementation of Schedule Policy/Career) of draft lists of each agency's employees recommended to be transferred to Schedule Policy/Career, regardless of whether they were initial draft lists, revised draft lists, or other confidential, pre-decisional draft recommendations about those lists. *See* Carrington Decl. ¶ 6. Next, OPM conferred with the OPM WPI—the office responsible for coordinating the relevant submissions. "OPM WPI advised they had coordinated all relevant agency communications and that, in April 2025, OPM established a dedicated Schedule Policy/Career mailbox, transitioning from employ@opm.gov to schedule-policycareer@opm.gov, and that documents were submitted either through the Schedule Policy/Career mailbox or via other agency-designated systems, including secure file exchanges." *Id.* ¶ 8.

OPM then searched for all emails sent to email addresses that the agency determined had been designated for all Schedule Policy/Career communications between OPM and Executive Branch agencies and gathered materials from those inboxes that were responsive to the requests. *See id.* ("OPM WPI provided the OPM FOIA team access to all records collected from its database of about 1360 files from submissions by 74 agency Chief Human Capital Officers (CHCO) (or designees) to OPM WPI"). And when its initial search produced limited results, OPM conducted a

supplemental search, based on relevant consultations, that gathered significant responsive matters. *Cf. Schrecker*, 349 F.3d at 662; *Steinberg*, 23 F.3d at 551. Indeed, the fact that OPM conducted a supplemental search after determining that it may not have initially located all records responsive to NTEU's FOIA request further confirms that its search was reasonable. *See Meeropol v. Meese*, 790 F.2d 942, 953 (D.C. Cir. 1986); *W. Ctr. for Journalism v. IRS*, 116 F. Supp. 2d 1, 10 (D.D.C. 2000), *aff'd,* 22 Fed. App'x 14 (D.C. Cir. 2001); *see also Corbeil v. DOJ*, No. 1:04-cv-2265, 2005 WL 3275910, at *3 (D.D.C. Sept. 26, 2005). That is all that is required under the FOIA.

OPM's search strategy—identifying the personnel responsible for the sought specific materials, asking them to search their records, and securing the relevant documents from them – is a "method[] which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990) (citations omitted). Therefore, OPM is entitled to summary judgment on the adequacy of its search. issue.

## II.   RECORDS RESPONSIVE TO NTEU'S FOIA REQUEST ARE PROPERLY PROTECTED UNDER EXEMPTION 5

OPM properly withheld in full the records responsive to NTEU's request under Exemption 5 of the FOIA because each record consists of confidential, pre-decisional interagency recommendations from agencies to OPM, which will themselves be inputted into recommendations to the President, each of which are protected by the deliberative process privilege.

### A.  Exemption 5 and the Deliberative Process Privilege

OPM properly withheld any further identification of the record responsive to NTEU's request under FOIA Exemption 5 because disclosing the records would interfere with confidential, pre-decisional, interagency and intra-agency deliberations protected by the deliberative process privilege.

Exemption 5 "encompass[es] the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context[.]" *Rockwell Int'l Corp. v. DOJ*,

235 F.3d 598, 601 (D.C. Cir. 2001) (quoting *Formaldehyde Inst. v. HHS*, 889 F.2d 1118, 1121 (D.C. Cir. 1989)); *see also Jud. Watch, Inc. v. DOJ*, 365 F.3d 1108, 1113 (D.C. Cir. 2004). Among other things, Exemption 5 generally protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party … in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). Known as the deliberative process privilege, this exemption protects "decision making processes of government agencies[.]" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150 (1975) (citations omitted). The privilege protects not merely documents, but also the integrity of the deliberative process itself. *Schell v. HHS*, 843 F.2d 933, 940 (6th Cir. 1988).

The deliberative process privilege allows the government to "withhold documents and other materials that would reveal 'advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997) (citations omitted). The privilege thus aims "to enhance 'the quality of agency decisions,' … by protecting open and frank discussion among those who make them within the Government[.]" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (citations omitted). Accordingly, the deliberative process privilege promotes the quality of agency decision-making by protecting "debate and candid consideration of alternatives within an agency." *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020) (quoting *Jordan v. DOJ*, 591 F.3d 753, 772 (D.C. Cir. 2020) (en banc)).

The deliberative process privilege "protects materials that are both predecisional and deliberative." *Mapother v. DOJ*, 3 F.3d 1533, 1537 (D.C. Cir. 1993) (citations omitted). "A document is 'predecisional' if it precedes, in temporal sequence, the 'decision' to which it relates." *Abtew v. DHS*, 808 F.3d 895, 898 (D.C. Cir. 2015) (quoting *Senate of Commonwealth of P.R. ex rel. Judiciary Comm. v. DOJ*, 823 F.2d 574, 585 (D.C. Cir. 1987) (additional citation omitted)). "To establish that a document is predecisional, the agency need not point to an agency final decision, but merely establish what deliberative process is involved, and the role that the

documents at issue played in that process." *Jud. Watch, Inc. v. Exp.-Imp. Bank*, 108 F. Supp. 2d 19, 35 (D.D.C. 2000) (citing *Formaldehyde Inst.*, 889 F.2d at 1123).

And "[a] document is deliberative if it 'reflects the give-and-take of the consultative process.'" *Citizens for Responsibility & Ethics in Wash. v. DHS*, 514 F. Supp. 2d 36, 43 (D.D.C. 2007) (citation omitted). For that reason, drafts "are commonly found exempt under the deliberative process exemption." *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 303 (D.D.C. 2007) (citation omitted).

To evaluate the applicability of the deliberative process privilege, "the key question in Exemption 5 cases [is] whether disclosure of materials would expose an agency's decisionmaking process in such a way as to discourage discussion within the agency and thereby undermine the agency's ability to perform its functions." *Schell*, 843 F.2d at 940 (alteration in original) (citation omitted); *see also Wolfe v. HHS*, 839 F.2d 768, 773 (D.C. Cir. 1988) (*en banc*) ("Congress adopted Exemption 5 because it recognized that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl."). As the D.C. Circuit has observed:

> There are essentially three policy bases for this privilege. First, it protects creative debate and candid consideration of alternatives within an agency, and, thereby, improves the quality of agency policy decisions. Second, it protects the public from the confusion that would result from premature exposure to discussions occurring before the policies affecting it had actually been settled upon. And third, it protects the integrity of the decision-making process itself by confirming that "officials should be judged by what they decided(,) not for matters they considered before making up their minds."

*Russell v. Dep't of Air Force*, 682 F.2d 1045, 1048 (D.C. Cir. 1982) (alteration in original) (citation omitted).

Notably, courts give agencies a wide berth in determining what "constitutes … 'part of the agency give-and-take … by which the decision itself is made.' The [agency] is better situated than … [the] Court to know what confidentiality is needed" to prevent injury to agency decisionmaking. *Chem. Mfrs. Ass'n v. Consumer Prod. Safety Comm'n*, 600 F. Supp. 114, 118 (D.D.C. 1984) (citations omitted). In other words, when evaluating deliberative-process claims,

9

courts "must give considerable deference to the agency's explanation of its decisional process, due to the agency's expertise in determining 'what confidentiality is needed "to prevent injury to the quality of agency decisions," while the decisionmaking process is in progress.'" *Pfeiffer v. CIA*, 721 F. Supp. 337, 340 (D.D.C. 1989) (citation omitted). As a result, courts should be "reluctant to force agencies to expose their decisionmaking processes." *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys*., 762 F. Supp. 2d 123, 135 (D.D.C. 2011) (citation omitted).

Because the deliberative process privilege protects deliberative, pre-decisional material, courts ordinarily require agencies to segregate and produce any purely factual content unless such content is "so inextricably intertwined with the deliberative sections of documents that its disclosure would inevitably reveal the government's deliberations[.]" *Elec. Frontier Found. v. DOJ*, 890 F. Supp. 2d 35, 47 (D.D.C. 2012) (citation omitted). In *Wolfe*, however, the D.C. Circuit, sitting *en banc*, recognized an important exception to this general rule. In that case, the plaintiffs requested information about the Food and Drug Administration ("FDA")'s regulatory proposals then pending review by the Office of Management and Budget ("OMB") and the Department of Health and Human Services ("HHS"), as well as the "dates of transmittal of proposed rules from FDA to HHS, from HHS to OMB, and from OMB back to HHS." 839 F.2d at 770-71. The district court and the panel majority thought that such information was insufficiently deliberative, as they opined that disclosure would only reveal "pre-decisional recommendations at a broad level of generality[.]" *Id*. at 773. The *en banc* majority, however, disagreed, reasoning that it is "not possible to resolve whether the information is deliberative by characterizing it … as merely involving a factual request for dates and titles." *Id*. at 774. In some circumstances, the *en banc* majority wrote, "even material that could be characterized as 'factual' would so expose the deliberative process that it must be covered by the privilege." *Id*. (citation omitted); *see also Russell*, 682 F.2d at 1048 (explaining that Exemption 5 "protects not only communications which are themselves deliberative in nature, but all communications which, if revealed, would expose to public view the deliberative process of an agency[,]" including "purely factual material [that]

10

would reveal an agency's decision-making process"); *McKinley v. Bd. of Governors of Fed. Res. Sys.*, 849 F. Supp. 2d 47, 63-64 (D.D.C. 2012) ("purely factual" information protected under the deliberative process privilege in circumstances where an agency employee "culled selected facts and data from the mass of available information[.]"); *Brannum v. Dominguez*, 377 F. Supp. 2d 75, 83 (D.D.C. 2005).

### B.   The Agency Lists of Employee Positions Recommended to be Transferred to Schedule Policy/Career are Draft, Confidential, Pre-decisional Interagency Records

In this case, OPM determined that the documents collected by the OPM office tasked with implementing Schedule Policy/Career from each of the 74 Executive Branch agencies recommending specific positions to be considered for designation as Schedule Policy/Career are properly withheld under FOIA Exemption 5 because they are protected by the deliberative process privilege. *See* Carrington Decl. ¶¶ 7-8.

On January 20, 2025, the President signed an Executive Order to establish Schedule Policy/Career as a new schedule in the excepted service. *See* Restoring Accountability to Policy-Influencing Positions within the Federal Workforce, Exec. Order No. 14171, 90 Fed. Reg. 8625 (Jan. 25, 2025). That order directed OPM to amend the Civil Service Regulations to facilitate the creation of Schedule Policy/Career, and OPM requested each Executive Branch agency subject to the order to provide lists of employee positions recommended to be transferred to Schedule Career/Policy. *See id*. OPM is reviewing these lists and making recommendations to the President, who may then issue an Executive Order transferring certain positions. *See, e.g.,* Memo. from OPM to Heads of Dep'ts & Agencies (Feb. 5, 2026), https://perma.cc/C7M8-UNHB.

With respect to the records identified as responsive to Plaintiff's FOIA request for these agency lists, OPM appropriately determined as an initial matter that these records are interagency records, because they involved submissions from federal agencies to OPM. *See* Carrington Decl. ¶ 8. The agency also properly determined that the documents sent to OPM WPI are pre-decisional in support of the eventual future Presidential decision to classify certain employees as

11

Policy/Career. *See id*. As OPM has explained, the records consists of initial draft recommendations, revised draft recommendations, or other pre-decisional, confidential interagency recommendations prepared by each Executive Branch agency of employee positions to be placed in Schedule Policy/Career. *See id*. ¶ 9 ("The lists submitted by agencies are not the final lists of positions, and they reflect recommendations and revisions between the submitting agencies and OPM. OPM has not concurred with a significant number of these agency recommendations.") None constitute a final list of employee positions to be transferred to Schedule Policy/Career—or even the final recommendation from OPM to the President, the eventual decisionmaker. *See id*. ("Further, the lists of recommended positions from agencies have been updated and revised numerous times and are still being revised. OPM in turn updates its concurrence determinations. OPM has assembled the submissions in its own database to ensure conformity of criteria, and OPM continues to clarify and update agency submissions. After OPM reviews these records, OPM will submit recommendations, and the President will make the final decision of what positions to designate for Schedule Policy/Career.")

Because the agency has not finalized its own recommendation and has not submitted its recommendations to the President, *see id*., the responsive records are clearly pre-decisional. *Cf. Abtew*, 808 F.3d at 898; *Jud. Watch*, 108 F. Supp. 2d at 35. Indeed, it is the President, and not OPM, who will make the final decision about which positions to designate for Schedule Policy/Career. *See* Carrington Decl. ¶ 9.

The records are also deliberative, as they reflect the "give-and-take" of agency deliberations. *Assassination Archives & Rsch. Ctr. v. CIA*, 781 F. App'x 11, 13 (D.C. Cir. 2019); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980). As OPM has explained, "[t]he lists submitted by agencies are not the final lists of positions, and they reflect recommendations and revisions between the submitting agencies and OPM. OPM has not concurred with a significant number of these agency recommendations. Further, the lists of recommended positions from agencies have been updated and revised numerous times and are still

12

being revised." Carrington Decl. ¶ 9.

### C. Disclosure of the Responsive Records Would Harm the Governmental Decisionmaking Processes Protected by the Deliberative Process Privilege

Having logically applied Exemption 5 to the withheld information, OPM also reasonably determined "that disclosure would harm an interest protected by" that exemption. 5 U.S.C. § 552(a)(8)(A). To "explain how a particular Exemption 5 withholding would harm the agency's deliberative process[,]" the agency "may take a categorical approach—that is, group together like records[,]" so long as it "explain[s] the foreseeable harm of disclosure for each category." *Rosenberg v. DOD*, 342 F. Supp. 3d 62, 78 (D.D.C. 2018). Moreover, "[t]he degree of detail necessary to substantiate a claim of foreseeable harm is context-specific." *Rosenberg v. DOD*, 442 F. Supp. 3d 240, 259 (D.D.C. 2020). Thus, "[i]n some instances, the withheld information may be so obviously sensitive—such as the disclosure of internal deliberations between a high-ranking military commander and senior government officials … that a simple statement illustrating why the privilege applies and identifying the harm likely to result from release 'may be enough.'" *Id*. (quoting *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 107 (D.D.C. 2019)).

In this case, OPM properly determined that disclosing the records would reveal information about the nature and scope of each of the agencies' intra-agency deliberations as well as OPM's intra-agency and interagency deliberations about which positions to recommend to the President be transferred to Schedule Policy/Career. *See* Carrington Decl. ¶ 10; *cf. Russell*, 682 F.2d at 1048.

OPM also properly determined that, if agency and OPM employees knew that the specific information they assembled for the President would later be disclosed to the public, they would be less likely to provide candid recommendations regarding which positions to designate for Schedule Policy/Career. *See* Carrington Decl. ¶ 10. OPM determined that identifying such positions would undermine the confidential, intra-agency and interagency decisionmaking

13

mechanisms that the deliberative process privilege is designed to protect. *See id*. This would impair OPM's ability to foster forthright, internal discussions necessary for efficient and proper agency and Presidential decisionmaking. *See id*.; *cf. Klamath Water Users Protective Ass'n*, 532 U.S. at 8-9. OPM therefore properly concluded that such an intrusion into OPM's non-final deliberations is precisely the harm against which the deliberative process privilege protects. *See* Carrington Decl. ¶ 10. This Court should give wide berth to OPM's determination. *See Chem. Mfrs. Ass'n*, 600 F. Supp. at 118.

Additionally, OPM properly determined that there would be public confusion if selected materials for the President's consideration were routinely released. *See* Carrington Decl. ¶ 10. Disclosing initial and revised draft lists of positions recommended for transfer risks the public misconstruing the selection of those positions as embodying the President's final decision. *See id*.; *accord Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1436 n.10 (D.C. Cir. 1992); *Juul Labs, Inc. v. FDA*, 731 F. Supp. 3d 46, 72 (D.D.C. 2024). "[P]ublic confusion … applies primarily to 'premature exposure to discussions occurring before the policies affecting it had actually been settled upon.'" *Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs*., No. 1:21-cv-1298, 2024 WL 810032, at *8 (D.D.C. Feb. 27, 2024) (quoting *Jud. Watch, Inc. v. DOD*, No. 1:19-cv-1384, 2021 WL 270503, at *4 n.2 (D.D.C. Jan. 27, 2021)). Intra-agency and Interagency recommendations for positions to be designated as Schedule Policy/Career do not reflect OPM's final recommendation to the President, and disclosure of which positions OPM is still evaluating would risk the public misconstruing the selection of those materials as embodying the agency's final position, when they represent only one component of the internal deliberative process that will lead to a final determination. *See* Carrington Decl. ¶ 10.

### D.  OPM PROPERLY CONCLUDED THAT NO PORTION OF THE RESPONSIVE RECORDS ARE SEGREGABLE

OPM properly concluded that no portion of the records responsive to NTEU's FOIA request are segregable.

14

The FOIA provides for disclosure of "[a]ny reasonably segregable portion of a record shall … after deletion of the portions which are exempt[.]" 5 U.S.C. § 552(b); *see also id.* § 552(a)(8)(ii). However, an agency need not disclose nonexempt information that is "inextricably intertwined with exempt portions" or "commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information[al] content" in order to comply with the segregation requirement. *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260, 261 n.55 (D.C. Cir. 1977); *Covington v. McLeod*, No. 09- 5336, 2010 WL 2930022, at *1 (D.C. Cir. July 18, 2010) (per curiam); *Nat'l Pub. Radio, Inc. v. FBI*, 539 F. Supp. 3d 1, 16 (D.D.C. 2021). Nor do agencies need to create new records in order to comply with the reasonably segregable requirement. *See, e.g., Cole v. Copan*, No. 1:19-cv-1182, 2020 WL 7042814, at *7 (D.D.C. Nov. 30, 2020).

In this case, OPM reasonably determined that there is no segregable portion of the agencies' initial draft lists, revised draft lists, or other material concerning employee positions recommended to be transferred to Schedule Policy/Career because it was each agency's selection of each position recommended for consideration reflects the confidential, pre-decisional, deliberations of that agency as well as the interagency deliberations between that agency and OPM and the lists contained no other information. *See* Carrington Decl. ¶ 11. Thus, OPM properly withheld each draft list in full.

Nor would it be appropriate to sever and release purely factual information contained in these records because each agency's selection of specific employee positions recommended to be designated for Schedule Policy/Career is itself deliberative in nature. *See* Carrington Decl. ¶ 9; *cf. Wolfe*, 839 F.2d 768, 770-71; *McKinley*, 849 F. Supp. 2d at 63-64; *Brannum*, 377 F. Supp. 2d at 83. By recommending specific positions, each agency and OPM exercised judgment in determining which positions should be considered for designation. *See* Carrington Decl. ¶ 9. Revealing the recommended positions would expose what the agencies and OPM considered to be pertinent prior OPM making a final recommendation to the President, which is the exact type of information the

15

deliberative process privilege protects. *See* Carrington Decl. ¶ 10.

## CONCLUSION

This Court should grant Defendant's motion for summary judgment.

Dated: May 13, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director

*s/ DRAFT*
JAMES D. TODD, JR.
Senior Trial Counsel
U.S. DEPARTMENT OF JUSTICE
Civil Division, Federal Programs Branch
Ben Franklin Station
P.O. Box 883
Washington, DC 20044

*Attorneys for Defendants*

16