UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NATIONAL TREASURY EMPLOYEES
   UNION,

     Plaintiff,

        v.

U.S. OFFICE OF PERSONNEL
   MANAGEMENT,

     Defendant.

No. 1:25-cv-3948 (JDB)

**<u>DECLARATION OF TONYA CARRINGTON</u>**

I, Tonya Carrington, declare as follows:

1.　　I am currently employed by the United States Office of Personnel Management (OPM), as a Government Information Specialist (Series 0306), and have been employed in this role since February 24, 2014.  In this role, among other things, I administer the processing of Freedom of Information Act (FOIA) and Privacy Act (PA) requests received by OPM.

2.　　I make this declaration based on my personal knowledge, and information provided to me while performing my duties, including information provided by employees within the FOIA team, the Office of Chief Information Officer (OCIO), the Office of Workforce Policy and Innovation (WPI), and the Office of General Counsel (OGC).  If called as a witness, I could and would testify competently to the facts contained in this declaration.

3.　　On August 20, 2025, OPM received a FOIA request from the National Treasury Employees Union (NTEU) and assigned it tracking number 25-HQ-2374-F.  NTEU requested, ". . . [a]ll petitions received by the Office of Personnel Management from all agencies identifying positions within the submitting agency to be transferred into Schedule Policy/Career, as created by Executive Order 13957 and pursuant to OPM Guidance on Implementing President Trump's

Executive Order titled, "Restoring Accountability To Policy-Influencing Positions Within the Federal Workforce" issued on Jan. 27, 2025." On November 24, 2025, OPM learned that NTEU filed a Complaint in the United States District Court for the District of Columbia, case number 25-cv-03948.

4.      On receipt of any FOIA request, OPM's FOIA team, which is responsible for processing FOIA requests, makes determinations both as to the appropriate offices in which to conduct an initial records search and as to the records repositories and search methods for the search. The FOIA team bases its assessment of where responsive records are likely maintained on a review of the content of the request itself and the nature of the records sought, as well as the team's familiarity with the types and locations of records that agency components maintain, discussions with knowledgeable personnel, and additional research that FOIA team staff may conduct on the topic of the request. Depending on the request, the FOIA team may utilize different search methods, such as a search of paper records or electronic searches of email systems, or other electronic databases. At times, the FOIA team will also inquire directly with knowledgeable officials in relevant offices to ascertain whether records exist and/or to inform search parameters.

5.      To ensure a thorough search, OPM's FOIA team regularly assesses potential additional locations or alternative search methods and initiates additional searches as appropriate. The team may have ongoing discussions with staff within the agency who are knowledgeable about the potential locations of records to determine where, and to what extent, potentially responsive records may exist that would not be identified via typical search methodologies (such as within classified records systems). Overall, the FOIA team employs an iterative search methodology that is tailored to the requirements of each individual FOIA request.

6.      On processing NTEU's FOIA request, the OPM FOIA team reasonably interpreted

2

NTEU's request for agency "petitions" received by OPM of employee positions to be transferred to Schedule Policy/Career as consisting of all submissions received from each agency CHCO or CHCO designee by the OPM Workforce Policy Innovation (WPI), which is the office that is coordinating the implementation of Schedule Policy/Career of draft lists of each agency's employees recommended to be transferred to Schedule Policy/Career, regardless of whether they were initial draft lists, revised draft lists, or other confidential, pre-decisional draft recommendations about those lists.  On December 18, 2025, the OPM FOIA Manager requested the OCIO conduct an email search for responsive records.  The search request was for all email from all accounts associated with employ@opm.gov, subject line "Schedule Policy" from January 27, 2025, to May 31, 2025.  That search failed to locate any responsive records or any dedicated email account.  On January 22, 2026, the OPM OCIO successfully identified the email address of the account most likely to contain records responsive to NTEU's FOIA request after determining the employ@opm.gov is an alias for the ESEmploy.Internet@opm.gov address and that the search of the alias address was the cause of the delay.  The OCIO then searched all email from all accounts associated with ESEmploy.Internet@opm.gov, subject line "Schedule Policy" from January 27, 2025, to May 31, 2025.  The OPM OCIO completed the search and downloaded the results to a SharePoint site for processing by the OPM FOIA team.  The OPM FOIA team uploaded the results to an e-discovery platform and processed the results.

7.    On February 26, 2026, after consultations with agencies with equities in the records, OPM provided a response to NTEU explaining that it was withholding the records located in response to the agency's search in full under FOIA Exemption 5, because the information contained in the records is protected by the deliberative process privilege.  The response also noted that within the completely withheld records were employees' identities and contact information in correspondence that the agency was withholding as exempt under FOIA Exemption 6 because they

3

contained personally identifying information for which disclosure would be an unwarranted invasion of personal privacy.

8.    In April 2026, the FOIA team determined that a supplemental search was necessary to ensure the adequacy of the search and coordinated with OPM WPI.  OPM WPI advised they had coordinated all relevant agency communications and that, in April 2025, OPM established a dedicated Schedule Policy/Career mailbox, transitioning from employ@opm.gov to schedule-policycareer@opm.gov, and that documents were submitted either through the Schedule Policy/Career mailbox or via other agency-designated systems, including secure file exchanges. OPM WPI provided the OPM FOIA team access to all records collected from its database of about 1360 files from submissions by 74 agency Chief Human Capital Officers (CHCO) (or designees) to OPM WPI.  The OPM FOIA team then developed a *Vaughn* index detailing the search results and the reasons for withholding responsive records.  The *Vaughn* index describes the records by: date received; sending agency; sender address (in each case from the CHCO or designee); recipient (OPM WPI); platform received (employ@opm.gov, schedule-policycareer@opm.gov, or secure file exchange); document type (spreadsheet, email, or other); exemption claimed; and justification (initial list, revised list, or other).

9.    OPM determined to withhold the records entirely under FOIA Exemption 5, because the records consist of confidential, pre-decisional opinions, recommendations, and deliberations from agencies for employee positions to be placed into Schedule Policy/Career and therefore protected by the deliberative process privilege.  For this determination, OPM considered section 5 in Executive Order 13957, Creating Schedule F in the Excepted Service, October 21, 2020, and Section 3(e)(iii) in Executive Order 14171, Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce, January 2025, which require OPM to develop a recommendation to the Office of the President of positions to be placed into Schedule

4

Policy/Career.  The lists submitted by agencies are not the final lists of positions, and they reflect recommendations and revisions between the submitting agencies and OPM.  OPM has not concurred with a significant number of these agency recommendations.  Further, the lists of recommended positions from agencies have been updated and revised numerous times and are still being revised.  OPM in turn updates its concurrence determinations.  OPM has assembled the submissions in its own database to ensure conformity of criteria, and OPM continues to clarify and update agency submissions.  After OPM reviews these records, OPM will submit recommendations, and the President will make the final decision of what positions to designate for Schedule Policy/Career.

10.     Pursuant to FOIA at 5 U.S.C. § 552(a)(3)(A), a FOIA disclosure constitutes a public release, and the public disclosure of this privileged information would irreversibly and irreparably harm the Government and its ability to develop the mandated recommendations to the President.  Identifying the employee positions that each Executive Branch agency recommended for consideration for transfer to Schedule Policy/Career would reveal information about the nature and scope of the agency's internal deliberations, as well as the inter-agency deliberations between that agency and OPM, leading up to the President's final decision on which positions will actually be transferred. The harm to the government in this case would be particularly severe here given the contents of the material, which includes highly sensitive information that would seriously undermine agency operations if publicly released.  OPM determined that identifying such positions would undermine the confidential, intra-agency and interagency decisionmaking mechanisms that the deliberative process privilege is designed to protect. This would impair the agency's ability to foster forthright, inter-agency and internal discussions necessary for efficient and proper agency decisionmaking. The harms of disclosure from recommendations that are not the final determination also include providing the public with erroneous information and would

5

further chill deliberations between and within executive agencies.  It would also cause public confusion about the employee positions that the President is considering for transfer to Schedule Policy/Career. Initial and revised draft lists of positions recommended for transfer risk the public misconstruing the selection of those positions as embodying the President's final decision. OPM therefore concluded that such an intrusion into the agencies' and the President's decisionmaking is precisely the harm against which the deliberative process privilege protects.

11.     OPM determined that no portion of the responsive records could be reasonably segregated to allow for the disclosure of any non-exempt information because it was each agency's initial and revised selections of those positions that reflects the confidential pre-decisional deliberations of that agency as well as the interagency deliberations between that agency and OPM.

12.     OPM determined to withhold portions of the records under FOIA Exemption 6, which requires an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  The information withheld under FOIA Exemption 6 was limited to the identifying information of senders and recipients of correspondence between and among agencies in correspondence about Schedule Policy/Career.  For the determination that employee identities and contact information is protected by FOIA Exemption 6, OPM considered that the public disclosure of the information would result in an invasion of substantial privacy interests, that the harm would include work disruptions and harassment, while the public interest in government operations has no relation to this information.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct.

By_____  signed by authorization  *CDC*

       Tonya Carrington
       Government Information Specialist
       U.S. Office of Personnel Management