IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NATIONAL TREASURY EMPLOYEES UNION,<br><br>　　　　Plaintiff,<br><br>v.<br><br>U.S. OFFICE OF PERSONNEL MANAGEMENT,<br><br>　　　　Defendant. | No. 1:25-cv-3948 (JDB) |

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

I.    The Administration Has Implemented the Framework for Schedule
      Policy/Career ............................................................................................................ 2

II.   NTEU's Narrow FOIA Request and OPM's Withholding ................................. 3

ARGUMENT ...................................................................................................................... 4

I.    Legal Standard ........................................................................................................ 4

II.   Agency Petitions Sent to OPM Did Not Precede Any Agency Decisions .......... 5

III.  Agency Petitions are Factual, Non-Deliberative Documents that Merely
      Reflect Compliance with Executive Branch Directives ..................................... 6

IV.   OPM Fails to Show Any Foreseeable Harm from Disclosure of the
      Requested Documents ............................................................................................ 8

      A.   The Foreseeable-Harm Requirement Is Independent of, and
           Additional to, the Privilege Showing ......................................................... 8

      B.   OPM's Conclusory Harm Analysis Cannot Sustain Full Categorical
           Withholding ................................................................................................... 9

      C.   Each of OPM's Specific Harm Theories Fails ......................................... 10

V.    Even If Some Material Were Deliberative, OPM Has Not Shown That It
      May Withhold Every Record in Full Without Segregating Non-Exempt
      Information ............................................................................................................. 12

CONCLUSION ................................................................................................................. 14

i

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Army Times Publ'g Co. v. Dep't of Air Force,*
998 F.2d 1067 (D.C. Cir. 1993)................................................................ 12–14

*Assassination Archives & Research Ctr. v. CIA,*
781 F. App'x 11 (D.C. Cir. 2019) ........................................................... 7

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.,*
436 F. Supp. 3d 90 (D.D.C. 2019) ........................................................ 9–10

*Coastal States Gas Corp. v. Dep't of Energy,*
617 F.2d 854 (D.C. Cir. 1980) .............................................................. 6

*Hum. Rts. Def. Ctr. v. U.S. Park Police,*
126 F.4th 708 (D.C. Cir. 2025) ............................................................. 8

*Jud. Watch, Inc. v. Dep't of Com.,*
375 F. Supp. 3d 93 (D.D.C. 2019) ........................................................ 9–10

*Jud. Watch, Inc. v. U.S. Dep't of Def.,*
847 F.3d 735 (D.C. Cir. 2017) .............................................................. 5

*Juul Labs, Inc. v. FDA,*
731 F. Supp. 3d 46 (D.D.C. 2024) ........................................................ 11–12

*Leopold v. DOJ,*
94 F.4th 33 (D.C. Cir. 2024) ................................................................ 5, 10

*Nat'l Ass'n of Minority Veterans v. Veterans Affs.,*
2024 U.S. Dist. LEXIS 33017 (D.D.C. Feb. 27, 2024) ................................... 10–11

*Nat'l Pub. Radio, Inc. v. Dep't of Homeland Sec.,*
No. 20-CV-2468, 2022 U.S. Dist. LEXIS 176411 (D.D.C. Sep. 28, 2022) .............. 9

*NLRB v. Sears, Roebuck & Co.,*
421 U.S. 132 (1975) ........................................................................... 7

*Petroleum Info. Corp. v. U.S. Dep't of Interior,*
976 F.2d 1429 (D.C. Cir. 1992)............................................................. 6, 12–13

*Pub. Citizen Health Rsch. Grp. v. FDA,*
185 F.3d 898 (D.C. Cir. 1999) .............................................................. 4

*Reps. Comm. for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021) ............................................................. 5, 8–12

*Shapiro v. U.S. Dep't of Just.*,
   893 F.3d 796 (D.C. Cir. 2018) ............................................................. 4–5

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*,
   177 F.3d 1022 (D.C. Cir. 1999).............................................................. 14

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*,
   592 U.S. 261 (2021) .............................................................................. 6–7

**Statutes**

5 U.S.C. § 552(a)(4)(B) .............................................................................. 4

5 U.S.C. § 552(a)(8)(A)(i)(I).......................................................................... 8

5 U.S.C. § 552(b) ...................................................................................... 12

**Regulations**

Improving Performance, Accountability and Responsiveness in the Civil Service,
   91 Fed. Reg. 5580 (Feb. 6, 2026) (to be codified at 5 C.F.R. pts. 210, 212–13,
   302, 432, 451, 537, 575, 752) ................................................................... 3

**Other Authorities**

Exec. Order No. 14171, 90 Fed. Reg. 8625 (Jan. 20, 2025) ........................... 2

Exec. Order No. 14410, 91 Fed. Reg. 34,893 (June 3, 2026) ........................ 3

S. Rep. No. 114-4 (2015) ............................................................................ 9

U.S. Off. of Pers. Mgmt., *Classification FAQ*, https://www.opm.gov/frequently-as-
   ked-questions/classification-faq/general/what-is-a-position-description/ ............ 14

U.S. Off. of Pers. Mgmt., *Guidance on Implementing President Trump's Executive
   Order titled,* "Restoring Accountability to Policy-Influencing Positions Within
   the Federal Workforce" (Jan. 27, 2025) ............................................. 2–3

**INTRODUCTION**

Schedule Policy/Career is the most consequential restructuring of the federal civil service in decades. It will reclassify potentially tens of thousands of career federal employees into a new excepted-service schedule and attempt to strip them of their due process rights. The policy framework is no longer tentative: the President put it in place with an executive order, the Office of Personnel Management (OPM) issued final implementing guidance and implementing regulations, and the President issued a second executive order shifting an initial batch of thousands of employees to Schedule Policy/Career.

NTEU seeks information on which positions various federal agencies determined met the Executive Order's and OPM's criteria for placement into Schedule Policy/Career. But OPM withheld every responsive record in full under the Freedom of Information Act's (FOIA) deliberative process privilege. The agency withheld approximately 1,360 files submitted by 74 agency Chief Human Capital Officers (CHCOs) or their designees, including spreadsheets, emails, and other supporting materials. OPM's justification rests on a single declaration that applies the same privilege, foreseeable-harm, and segregability analysis to every agency, every file, and every document type. FOIA requires more.

The withheld documents are not predecisional because they are the agencies' conclusions about which positions should be included in Schedule Policy/Career. They are not deliberative because they do not reflect any intra- or inter-agency give and take; they are simply agencies applying established, public criteria as to which

1

positions should be in Schedule Policy/Career. For that same reason, disclosure would cause no foreseeable harm, such as public confusion, because agencies are merely carrying out public presidential and OPM directives.

For these reasons, OPM has failed to show that the requested documents are privileged. Its motion for summary judgment should be denied, and NTEU's cross motion should be granted.

## BACKGROUND

**I.     The Administration Has Implemented the Framework for Schedule Policy/Career**

On January 20, 2025, the President issued an executive order establishing "Schedule Policy/Career" as a new excepted-service classification for certain federal positions deemed to be "policy-influencing." *See* Exec. Order No. 14171, 90 Fed. Reg. 8625 (Jan. 20, 2025) (Schedule Policy/Career EO). The Order's clear intent was to make employees in these positions "at-will." *See id.* §§ 1, 3. It directed OPM to amend civil-service regulations to implement the new schedule and to provide guidance to executive agencies regarding positions potentially subject to reclassification. *Id.* §§ 4, 5.

OPM complied with the President's Order. It issued "final guidance" on January 27, 2025, instructing agency heads to review positions and to submit petitions identifying positions for placement into Schedule Policy/Career. U.S. Off. of Pers. Mgmt., *Guidance on Implementing President Trump's Executive Order titled,* "Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce" (Jan. 27, 2025) (Jan. 27 Guidance), https://www.opm.gov/chcoc/latest-

2

memos/guidance-on-implementing-president-trump-s-executive-order-titled-restor-ing-accountability-to-policy-influencing-positions-within-the-federal-workforce.pdf. OPM's guidance established the criteria agencies were to apply, the format in which they were to report, and deadlines. *Id.* OPM also promulgated a new regulation which established a detailed framework for positions moved into Schedule Pol-icy/Career. *See* Improving Performance, Accountability and Responsiveness in the Civil Service, 91 Fed. Reg. 5580 (Feb. 6, 2026) (to be codified at 5 C.F.R. pts. 210, 212–13, 302, 432, 451, 537, 575, 752).

More recently, the President issued another executive order implementing OPM's recommendations and moving numerous positions into Schedule Policy/Ca-reer. Exec. Order No. 14410, 91 Fed. Reg. 34,893 (June 3, 2026).

Taken together, the initial executive order, OPM's final guidance, and OPM's final rule established a complete policy framework for Schedule Policy/Career. NTEU is not seeking documents regarding the creation of that policy. NTEU seeks only the products of the policy's implementation: the agency submissions generated in response to OPM's directives, under OPM's published criteria, and through OPM's designated channels.

## II.    NTEU's Narrow FOIA Request and OPM's Withholding

On August 20, 2025, NTEU submitted a FOIA request to OPM seeking "all petitions received by [OPM] from all agencies identifying positions within the sub-mitting agency to be transferred into Schedule Policy/Career." Def.'s Statement of Material Facts ¶ 1, Dkt. No. 21-1 (Def.'s SOF). After several delays and an initial agency claim that it had no responsive documents at all, Am. Compl. ¶ 15, Dkt. No.

18, OPM now asserts it has approximately 1,360 files from 74 agency Chief Human Capital Officer (CHCOs) or their designees, *see* Def.'s SOF ¶ 6. OPM has withheld them all in full under Exemption 5.

OPM prepared a *Vaughn* index describing each record by date, sending agency, sender address, recipient, platform received, document type (spreadsheet, email, or other), exemption claimed, and OPM's stated justification for withholding. *See* Decl. of Tonya Carrington ¶ 8, Dkt. No. 21-2 (Carrington Decl.); Carrington Decl. Ex. A, Dkt. No. 21-3 (Def.'s *Vaughn* Index). Each record's withholding justification is categorized as "Initial list of potential position[s] for inclusion," "Revised list of potential positions," or "(Select . . . )." *See* Carrington Decl. ¶ 8; Def.'s *Vaughn* Index at 1.

**ARGUMENT**

## I.    Legal Standard

In a FOIA dispute, "the agency has the burden of showing that requested information comes within a FOIA exemption," while the requester need only "establish the absence of material factual issues." *Pub. Citizen Health Rsch. Grp. v. FDA*, 185 F.3d 898, 904–05 (D.C. Cir. 1999) (first quoting *Niagara Mohawk Power Corp. v. U.S. Dep't of Energy*, 169 F.3d 16, 18 (D.C. Cir. 1999); and then quoting *Nat'l Ass'n of Gov't Employees v. Campbell*, 593 F.2d 1023, 1027 (D.C. Cir. 1978)).

The Court reviews an agency's withholding determination *de novo*. 5 U.S.C. § 552(a)(4)(B). To carry its burden, an agency may rely on declarations and a *Vaughn* submission, but it must describe the withheld material and the basis for withholding with enough specificity to permit meaningful judicial review. *See*

4

*Shapiro v. U.S. Dep't of Just.*, 893 F.3d 796, 799 (D.C. Cir. 2018) (quoting *ACLU v. Dep't of Def.*, 628 F.3d 612, 619 (D.C. Cir. 2011)). When an agency invokes the deliberative process privilege, it must show that the withheld documents are both predecisional and deliberative, *Jud. Watch, Inc. v. U.S. Dep't of Def.*, 847 F.3d 735, 739 (D.C. Cir. 2017), and that release of the documents would cause reasonably foreseeable harm to an exemption-protected interest, *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024); *Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369 (D.C. Cir. 2021).

## II.   Agency Petitions Sent to OPM Did Not Precede Any Agency Decisions

OPM argues the agency petitions are predecisional by claiming they are merely the first step of a long process culminating in an eventual presidential order. But this mischaracterizes NTEU's request. NTEU does not seek any internal OPM or White House communications reflecting what OPM or presidential staffers think should be included in Schedule Policy/Career. NTEU instead asked for the *agencies' petitions*, which are the final step in the agencies' decisions as to what positions belong in Schedule Policy/Career.

OPM says that a document is predecisional "if it precedes, in temporal sequence, the 'decision' to which it relates." Def.'s Mem. in Supp. of Mot. for Summ. J. 8, Dkt. No. 21 (Def.'s Mem.) (cleaned up). But OPM's own definition defeats its position. The agency petitions NTEU requested follow, rather than precede, agencies' decisions on what to include in their petitions. Put another way, the agency petitions only support decisions already made by the President and OPM and cannot

5

therefore be deemed predecisional. *See Petroleum Info. Corp. v. U.S. Dep't of Interior*, 976 F.2d 1429, 1434–35 (D.C. Cir. 1992) (holding document is not predecisional if it was prepared "to support a decision already made").

### III.    Agency Petitions are Factual, Non-Deliberative Documents that Merely Reflect Compliance with Executive Branch Directives

Even if the requested documents were predecisional, the government's argument would fail because they are not deliberative.[1] A deliberative process involves the open-ended formation of policy: debating alternatives, weighing competing approaches, and exchanging views on how a decision should be made. But as OPM itself concedes, it "assembled the submissions in its own database *to ensure conformity of criteria*." Carrington Decl. ¶ 9 (emphasis added). These documents do not, therefore, show policy formulation—they merely reflect compliance.

This Circuit has explained that records that explain agency regulations and apply established policy are not deliberative. Records that interpret existing regulations or apply established agency standards to particular facts reflect program implementation, not the consultative process of policy formation. *Coastal States*, 617 F.2d at 867–68. Likewise, factual material compiled according to standardized criteria is not deliberative merely because the agency later uses that material in discretionary decision making. *Petroleum Info.*, 976 F.2d at 1435–36.[2]

---

[1] Simply labeling something as a draft is not sufficient to establish the privilege. *See U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 269 (2021) (labeling a document "draft" is not determinative); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 867 (D.C. Cir. 1980) (explaining agencies cannot hide "behind a veil of privilege" by choosing not to designate documents as "'formal,' 'binding,' or 'final'").
[2] OPM's observation that it "has not concurred with a significant number of these agency recommendations," Carrington Decl. ¶ 9, does not rescue the

The Supreme Court has explained that Exemption 5 does not protect records that reflect or implement an agency's "working law"—that is, the adopted policy that governs its conduct. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 152–53 (1975). The Court stated that a document is deliberative if it was "prepared to help the agency formulate its position," *Sierra Club, Inc.*, 592 U.S. at 268, and emphasized that the inquiry is "functional rather than formal," *id.* at 273. This principle squarely applies here. Schedule Policy/Career policy was already adopted and implemented, through presidential order and OPM guidance, before any of these agency petitions were generated.

The D.C. Circuit's unpublished decision in *Assassination Archives & Research Center v. CIA*, 781 F. App'x 11 (D.C. Cir. 2019), does not help OPM. *See* Def.'s Mem. 12, Dkt. No. 21. That case did not involve agency submissions identifying positions under published personnel-policy criteria. Instead, it involved redactions to CIA internal forms used to process the requester's own FOIA requests, including communications about the agency's search and response obligations. *Assassination Archives*, 781 F. App'x at 13. The D.C. Circuit therefore had no occasion to decide whether Exemption 5 applies to the materially different records at issue here: structured position-inventory spreadsheets submitted by agency CHCOs under published classification criteria; transmittal emails forwarding those spreadsheets; and pre-

---

deliberativeness showing—it confirms its inadequacy. Non-concurrence could reflect mechanical criteria-checking, qualitative judgment about a position's policy-influencing character, or something in between. The declaration does not say. What non-concurrence determinations reflect is OPM's burden to explain; it is not NTEU's (or the Court's) job to guess.

existing position-description documents created before Schedule Policy/Career existed.

By the time OPM solicited position-inventory submissions, the foundational policy decisions had already been made. The President established Schedule Policy/Career by executive order. OPM published the applicable classification criteria through implementing guidance and regulations. Agencies were not invited to deliberate about *whether* the schedule should exist, what criteria should govern designation, or how the policy ought to be designed. They were directed—through mandatory submissions, dedicated mailboxes, and fixed timelines—to apply established criteria to their existing workforces and report back.

## IV.    OPM Fails to Show Any Foreseeable Harm from Disclosure of the Requested Documents

### A.    The Foreseeable-Harm Requirement Is Independent of, and Additional to, the Privilege Showing

In addition to showing that the requested documents are predecisional and deliberative, the government must also show that disclosure "would harm an interest protected by" the exemption invoked. 5 U.S.C. § 552(a)(8)(A)(i)(I). "Speculative or abstract fears" are insufficient. *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 717–18 (D.C. Cir. 2025) (quoting *Reps. Comm.*, 3 F.4th at 369). An agency may proceed "on a category-by-category basis rather than a document-by-document basis," but only if each category contains "like records" and the threat of harm is "independently demonstrated for each category." *Reps. Comm.*, 3 F.4th at 369 .

**B.    OPM's Conclusory Harm Analysis Cannot Sustain Full Categorical Withholding**

OPM asks the Court to sustain a sweeping, record-wide withholding based largely on a single, one-size-fits-all paragraph in the declaration discussing foreseeable harm. *See* Carrington Decl. ¶ 10. That paragraph addresses 174 agencies, all 1,360 files, and all three categories of documents identified on OPM's *Vaughn* index. It asserted that disclosure would "reveal information about the nature and scope of [each] of the agenc[ies'] intra-agency deliberations," "impair the[ir] . . . ability to [be] forthright," and risk "public confusion." *Id.*

That approach is insufficient. An agency may not satisfy its burden by turning a "generalized justification . . . into a game of 'Mad Libs'" by "fill[ing] in the blanks with the name of the agency and the things that it does." *Nat'l Pub. Radio, Inc. v. Dep't of Homeland Sec.*, No. 20-cv-2468, 2022 U.S. Dist. LEXIS 176411, at *23 (D.D.C. Sep. 28, 2022). OPM treats initial lists, revised lists, and supporting materials the same, without explaining whether first-pass recommendations, superseded submissions, and current recommendations pose the same harm. It treats Excel spreadsheets, transmittal emails, and separately submitted position-description documents as though they present the same disclosure risk, even though each has a different informational character. Such blanket assertions are contrary to what FOIA requires. *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 105 (D.D.C. 2019) (explaining that agencies must address foreseeable harm in light of each record's "age, content, and character" (quoting S. Rep. No. 114-4, at 8 (2015)); *see also Jud. Watch, Inc. v. Dep't of Com.*, 375 F. Supp. 3d 93,

9

99–100 (D.D.C. 2019) (holding the agency's declaration insufficient when agency failed to connect the asserted harm to the specific information withheld.)

### C. Each of OPM's Specific Harm Theories Fails

Assessed individually or together, OPM's various theories of foreseeable harm fail. OPM first asserts that disclosure would cause harm because it would reveal the "nature and scope" of agency and OPM deliberations. Def.'s Mem. at 13; Carrington Decl. ¶ 10. But this merely recycles the deliberative argument already addressed. The foreseeable-harm requirement is separate and additional to the threshold showing that an exemption applies. *Leopold*, 94 F.4th at 37 (citing *Reps. Comm.*, 3 F.4th at 369). OPM must provide a "focused and concrete demonstration" that disclosure would "actually impede those same agency deliberations going forward." *Reps. Comm.*, 3 F.4th at 370.

Second, OPM argues without elaboration that disclosure would inhibit "candid" recommendations. *See* Def.'s Mem. at 13. But it is not enough to say disclosure would impair agency deliberations; the agency must explain how disclosure of the particular material withheld would cause that harm. *Reps. Comm.*, 3 F.4th at 369–70.

*National Association of Minority Veterans v. Veterans Affairs* illustrates the point. No. 21-cv-1298, 2024 U.S. Dist. LEXIS 33017 (D.D.C. Feb. 27, 2024). There, VA argued that disclosure would cause agency employees to "temper their candor" and harm "necessary internal debate." *Id.* at *34–35. Applying *Reporters Committee*, the court rejected those assertions because the agency had not shown *how* they differed from routine assertions of deliberative-process privilege and had not explained

10

the particular sensitivity of the withheld information, the role it played in the relevant decisional process, or how disclosure would harm similar deliberations in the future. *Id.* at \*21 (quoting *Reps. Comm.*, 3 F.4th at 369–72).

OPM asserts a third harm—that disclosure could cause "confusion" because the public might misconstrue "the selection of those positions as embodying the President's final decision." Def.'s Mem. at 14. This likewise fails as a categorical foreseeable-harm showing. The Schedule Policy/Career EO and OPM directive are public. OPM does not explain why the public would confuse an agency's list of what positions should be in Schedule Policy/Career with any (eventual) final presidential determination.

OPM's cited cases do not fill that gap. In *Minority Veterans*, the Court explained that "public confusion suffices as a harm justifying withholding under Exemption 5 only where the fear of public confusion would stifle intra-agency dialogue," and that the rationale has "minimal, if any, force where the agency decision has already been made." 2024 U.S. Dist. LEXIS 33017, at \*23–24 (cleaned up). The Court rejected VA's public-confusion showing because public confusion, standing alone, is not itself an interest protected by Exemption 5. *Id.* Those limits matter here. OPM does not tie its public-confusion theory to a concrete risk that disclosure of particular records would impair future deliberations.

*Juul Labs, Inc. v. FDA*, 731 F. Supp. 3d 46 (D.D.C. 2024), reinforces the same point. There, the Court accepted a public-confusion rationale only after the agency tied that risk to specific, identified records—staff scientists' preliminary product

11

assessments on which FDA had expressly not reached a final agency decision. *Id.* at 71–73. The Court emphasized that judges must "proceed with caution" when agencies invoke public confusion and must ensure the agency is not using that rationale to avoid disclosure of information that is erroneous, embarrassing, or otherwise subject to public vetting. *Id.* at 72 (quoting *Petroleum Info.*, 976 F.2d at 1436 n.10; *Reps. Comm.*, 3 F.4th at 369).

OPM's generalized assertion of "public confusion" and other alleged harm is not sufficient to establish the privilege.

## V.    Even If Some Material Were Deliberative, OPM Has Not Shown That It May Withhold Every Record in Full Without Segregating Non-Exempt Information

Even if the Court concludes that some portions of the withheld records are predecisional, deliberative, and subject to reasonably foreseeable harm from disclosure, OPM's burden does not end there. FOIA requires disclosure of "[a]ny reasonably segregable portion of a record" after exempt material is deleted. 5 U.S.C. § 552(b). OPM has not carried that burden. Its segregability showing rests on a single conclusory sentence in the declaration that equates an agency's selection of positions with every item of information contained in, attached to, or transmitted with the submissions. *See* Carrington Decl. ¶ 11. That is not a segregability analysis.

"Exemption 5 applies only to the deliberative portion of a document and not to any purely factual, non-exempt information the document contains." *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1071 (D.C. Cir. 1993). Thus, "[n]on-exempt information must be disclosed if it is 'reasonably segregable' from exempt portions," and "the agency bears the burden of showing that no such segregable

information exists." *Id.* (quoting *PHE, Inc. v. Dep't of Just.*, 983 F.2d 248, 252 (D.C. Cir. 1993)).

In *Army Times*, the Air Force withheld survey results under Exemption 5. *Id.* at 1068. But the D.C. Circuit remanded because the agency's *Vaughn* index and affidavits did not provide enough specificity to determine whether the withheld information differed in any relevant respect from factual material that could be released. *Id.* at 1071–72. The Court emphasized that, "because only the agency knows the substance of the withheld information," agency declarations must explain the basis for withholding with enough detail for the requester and the Court to test the claim. *See id.* at 1071 (quoting *PHE*, 983 F.2d at 250). Without that specificity, the Court lacks a basis to distinguish exempt material from non-exempt material and cannot make the required segregability finding. *See id.* at 1071–72.

OPM's declaration says only that "each agency's initial and revised selections" of each position recommended for consideration "reflects the confidential pre-decisional deliberations of that agency as well as the interagency deliberations between that agency and OPM." Carrington Decl. ¶ 11. But OPM must show more than that. *See Petroleum Info.,* 976 F.2d at 1434–35 (requiring agencies to show that disclosure of particular facts would reveal protected policy judgment to sustain withholding). OPM's *Vaughn* index identifies several distinct document types within the withheld records, including spreadsheets, transmittal emails, and separately submitted position-description documents. *See, e.g.*, Def.'s *Vaughn* Index at 1 (entries in column labeled "Document Description"). OPM has failed to explain why

13

any such factual material cannot be segregated and provided. A federal position description, after all, is ordinarily an unremarkable administrative record used for personnel and classification purposes. *See* U.S. Off. of Pers. Mgmt., *Classification FAQ* (explaining position descriptions state a position's "major duties, responsibilities, and supervisory relationships"), https://www.opm.gov/frequently-asked-questions/classification-faq/general/what-is-a-position-description/ (last visited June 2, 2026). Similarly, OPM withheld transmittal emails without explaining whether they contain substantive information or are simply bare-bones transmissions.

OPM has not carried its burden to demonstrate that no reasonably segregable, non-exempt information exists within the withheld records. The Court therefore lacks a sufficient record to make the independent segregability finding FOIA requires. *See Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999); *Army Times*, 998 F.2d at 1071–72. It should either grant summary judgment in NTEU's favor or alternatively conduct an *in camera* review of a sample of the withheld documents.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's Motion for Summary Judgment and grant Plaintiff's Cross-Motion for Summary Judgment.

June 10, 2026

Respectfully submitted,

PARAS N. SHAH
(D.C. Bar No. 983881)
General Counsel

ALLISON C. GILES
(D.C. Bar No. 439705)
Associate General Counsel

*/s/Thaxton Blaise Springfield*
THAXTON BLAISE SPRINGFIELD
(D.C. Bar No. 90019358)
Assistant Counsel
NATIONAL TREASURY
EMPLOYEES UNION
800 K Street, N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5505

Counsel for Plaintiff

15