IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NATIONAL TREASURY EMPLOYEES UNION, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 1:25-cv-3948 (JDB) |
| v. | ) ) | |
| U.S. OFFICE OF PERSONNEL MANAGEMENT, | ) ) ) | |
| Defendant. | ) ) ) | |

**REPLY MEMORANDUM IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT ......................................................................................................... 3

I.     OPM Has Not Shown That Every Responsive Record Reveals a  Deliberative Process. ........................................................................................ 3

      A.    The Governing Framework Does Not Establish the Function of Every Responsive Record. ........................................................................ 3

      B.    Later Presidential Action May Establish Predecisionality, But Not the Deliberative Character of Every Record. ........................................... 5

      C.    Revisions and Nonconcurrence Show That Deliberation  Occurred, Not Which Records Reveal It. ................................................................ 6

II.    OPM Has Not Shown That Disclosure of Every Withheld Record or Portion Would Cause Foreseeable Harm. ...................................................................... 7

      A.    Common Subject Matter Does Not Make the Responsive  Records "Functionally Identical." ........................................................................... 8

      B.    OPM Has Not Connected the Distinct Information Withheld to a Loss of Candor. ................................................................................................ 10

      C.    OPM Has Not Connected Its Public-Confusion Theory to  Protected Deliberative Harm. ............................................................................. 12

III.   OPM Has Not Shown That It May Withhold Every Responsive Record in Full. ............................................................................................................... 14

      A.    Counsel's Description of the Lists Does Not Establish That Every Responsive File Is Nonsegregable. ...................................................... 14

      B.    Deliberative Position Selection Does Not Render Every  Associated Record Nonsegregable. ......................................................................... 15

      C.    *Rudometkin* Confirms That OPM's Segregability Showing Is Insufficient. ....................................................................................... 16

CONCLUSION ................................................................................................... 17

**<u>TABLE OF AUTHORITIES</u>**

Page(s)

**Cases**

*Am. First Legal Found. v. U.S. Dep't of Agric.*,
126 F.4th 691 (D.C. Cir. 2025) ...................................................................... 1, 5–6

*Am. First Legal Found. v. U.S. DOJ*,
805 F. Supp. 3d 187 (D.D.C. 2025) ...................................................................... 11

*Ancient Coin Collectors Guild v. U.S. Dep't of State*,
641 F.3d 504 (D.C. Cir. 2011) ...................................................................... 15

*Army Times Publ'g Co. v. Dep't of the Air Force*,
998 F.2d 1067 (D.C. Cir. 1993) ...................................................................... 14–16

*Coastal States Gas Corp. v. Dep't of Energy*,
617 F.2d 854 (D.C. Cir. 1980) ...................................................................... 4

*Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*,
436 F. Supp. 3d 90 (D.D.C. 2019) ...................................................................... 9

*Emuwa v. Dep't of Homeland Sec.*,
113 F.4th 1009 (D.C. Cir. 2024) ...................................................................... 8

*Energy Pol'y Advocs. v. SEC*,
699 F. Supp. 3d 56 (D.D.C. 2023) ...................................................................... 11–12

*Jud. Watch, Inc. v. Dep't of Com.*,
375 F. Supp. 3d 93 (D.D.C. 2019) ...................................................................... 9

*Jud. Watch, Inc. v. DOJ*,
20 F.4th 49 (D.C. Cir. 2021) ...................................................................... 7, 9, 15

*Juul Labs, Inc. v. FDA*,
731 F. Supp. 3d 46 (D.D.C. 2024) ...................................................................... 13

*Laws.' Comm. for C.R. v. OMB*,
No. 18-645, 2023 U.S. Dist. LEXIS 84058 (D.D.C. May 12, 2023) ................. 11–12

*Leopold v. DOJ*,
94 F.4th 33 (D.C. Cir. 2024) ...................................................................... 7, 14

*Machado Amadis v. Dep't of State*,
971 F.3d 364 (D.C. Cir. 2020) ...................................................................... 11–12

*Mapother v. DOJ*,
3 F.3d 1533 (D.C. Cir. 1993) ...................................................................... 7, 15

*Mead Data Cent., Inc. v. U.S. Dep't of the Air Force,*
  566 F.2d 242 (D.C. Cir. 1977) ................................................................... 16

*Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs.,*
  No. 21-1298, 2024 U.S. Dist. LEXIS 33017 (D.D.C. Feb. 27, 2024) ..................... 12

*Nat'l Pub. Radio, Inc. v. DHS,*
  No. 20-2468, 2022 U.S. Dist. LEXIS 176411 (D.D.C. Sept. 28, 2022) ................... 9

*Petroleum Info. Corp. v. Dep't of the Interior,*
  976 F.2d 1429 (D.C. Cir. 1992) ............................................................... 4, 7

*Pub. Citizen, Inc. v. OMB,*
  598 F.3d 865 (D.C. Cir. 2009) ............................................................... 1, 5

*Reps. Comm. for Freedom of the Press v. FBI,*
  3 F.4th 350 (D.C. Cir. 2021) ............................................................... 2, 7–10

*Rudometkin v. United States,*
  140 F.4th 480 (D.C. Cir. 2025) ...................................................... 10–11, 14, 16

*Trans-Pac. Policing Agreement v. U.S. Customs Serv.,*
  177 F.3d 1022 (D.C. Cir. 1999) ............................................................... 14–16

*U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.,*
  592 U.S. 261 (2021) ............................................................... 3–4

**Statutes**

5 U.S.C. § 552(a)(8)(A)(ii) ............................................................... 14

5 U.S.C. § 552(b) ............................................................... 14

**Court Rules**

Fed. R. Civ. P. 56(c)(1) ............................................................... 9, 14–15

**Executive and Administrative Materials**

Exec. Order No. 14171,
  90 Fed. Reg. 8625 (Jan. 20, 2025) ............................................................... 3–4

Exec. Order No. 14410,
  91 Fed. Reg. 34,893 (June 3, 2026) ............................................................... 13

U.S. Off. of Pers. Mgmt., *Guidance on Implementing President Trump's Executive
  Order titled,* "Restoring Accountability to Policy-Influencing Positions Within
  the Federal Workforce", (Jan. 27, 2025) ............................................................... 3–4, 11

iii

## INTRODUCTION

OPM does not justify withholding every portion of approximately 1,360 responsive files. It has not shown that every spreadsheet, email, position-description file, and other responsive record is deliberative; that disclosure of every withheld portion would cause foreseeable harm; or that no reasonably segregable information can be released.

OPM's position depends on three unsupported inferences. First, because substantive agency recommendations may have informed later Executive Branch decisions, OPM treats every antecedent record as deliberative. But predecisionality and deliberativeness are distinct, and OPM's declaration identifies an overall decisional sequence without explaining how the materially different records functioned in that process or how their disclosure would reveal protected consultative give-and-take. *Cf. Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 874–76 (D.C. Cir. 2009). Revisions and OPM's nonconcurrence with some recommendations may show that deliberation occurred but not which records—or which portions—reflect it. Nor does *America First Legal Foundation v. Department of Agriculture*, 126 F.4th 691 (D.C. Cir. 2025), establish otherwise. That narrow decision applied the broader presidential-communications privilege to specifically solicited records whose contents and use in presidential deliberations were described through detailed declarations. *Id.* at 695–98. It does not establish that every record associated with agency recommendations is deliberative under the deliberative-process privilege.

1

Second, because all responsive records concern Schedule Policy/Career, OPM treats them as "functionally identical" for foreseeable-harm purposes. But the request's subject matter does not determine the contents, decisional function, or disclosure risk of every record it captures. *See Reps. Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 369–70 (D.C. Cir. 2021). OPM's own declaration distinguishes spreadsheets, emails, and files classified as "other," as well as initial and revised submissions received at different times and through different platforms. Yet OPM applies the same candor and public-confusion rationale to all of them without explaining why differences between those categories of records are immaterial or connecting the information actually withheld to a concrete harm.

Third, because identifying a position selected by an agency may itself reveal evaluative judgment, OPM treats every associated record and portion as nonsegregable. But Ms. Carrington offers only the conclusion that no portion can be released because each agency's "initial and revised selections" reflects deliberation. Decl. of Tonya Carrington ¶ 11, Dkt. No. 21-2 (Carrington Decl.). She does not describe the contents of the separately indexed emails and "other" files, identify the fields contained in the spreadsheets, attest to a line-by-line review, or consider whether information otherwise within Exemption 5 could be released without foreseeable harm. Counsel's assertion that "the lists contained no other information," Def.'s Combined Reply in Supp. of Its Mot. for Summ. J. and In Opp. to Pl.'s Mot. for Summ. J. 2, Dkt. No. 26 (Def.'s Reply), addresses only the lists and cannot establish the undisclosed contents of the entire responsive universe.

OPM has not justified withholding every responsive file in full. The Court should therefore deny OPM's motion and grant NTEU's cross-motion.

## ARGUMENT

### I.   OPM Has Not Shown That Every Responsive Record Reveals a Deliberative Process.

OPM identifies a relevant decisional sequence: agencies submitted documents to OPM, OPM reviewed those, and the President made or may later make decisions. The agency documents, however, reflect post-decision agency conclusions implementing established criteria. *See* Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. and in Supp. of Its Cross-Mot. for Summ. J. 5–8, Dkt. No. 24-1 (Pl.'s Cross-Mot.). And, even if those documents preceded later Executive Branch decisions, it does not establish that every responsive record is entirely exempt from disclosure. *Id.* at 12–14. That inquiry is functional and requires evaluation of records—or meaningful category of like records—"in the context of the administrative process which generated them." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 592 U.S. 261, 269 (2021) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 138 (1975)). OPM must explain how the materially different responsive records functioned in the consultative process and how their disclosure would reveal that process. It did not.

### A.   The Governing Framework Does Not Establish the Function of Every Responsive Record.

Before agencies submitted the requested records, the President and OPM had established guideposts for identifying Schedule Policy/Career positions, required written explanations grounded in objective position duties, made incumbent-specific characteristics irrelevant, and prescribed submission procedures and deadlines. *See*

3

Exec. Order No. 14171, 90 Fed. Reg. 8625, 8626–27 (Jan. 20, 2025); U.S. Off. of Pers. Mgmt., *Guidance on Implementing President Trump's Executive Order titled,* "Restoring Accountability to Policy-Influencing Positions Within the Federal Workforce" 2–5 (Jan. 27, 2025) (Jan. 27 Guidance), https://www.opm.gov/chcoc/latest-memos/guidance-on-implementing-president-trump-s-executive-order-titled-restoring-accountability-to-policy-influencing-positions-within-the-federal-workforce.pdf. OPM assembled the submissions in a database to ensure "conformity of criteria." Carrington Decl. ¶ 9.

Those features did not make position selection mechanical: the guideposts were not determinative, and OPM and the President retained discretion. Def.'s Reply 7; Jan. 27 Guidance 4. But the fact that some recommendations involved judgment does not establish that every record created or transmitted during the process reveals the consultative give-and-take underlying a recommendation or designation. *See Sierra Club*, 592 U.S. at 268–69 (holding deliberativeness turns on whether the particular document was prepared to help the agency formulate its position); *Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434–36 (D.C. Cir. 1992) (distinguishing exempt material that reveals the formulation or exercise of policy-implicating judgment from nonexempt material that merely involves judgment in its preparation); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866–69 (D.C. Cir. 1980) (holding documents applying established policies to specific facts were not predecisional merely because they fed an ongoing agency process). OPM therefore had to show how each distinct record—or valid category of like records—

4

functioned in the deliberative process and revealed protected judgment. Its one-size-fits-all showing does not.

### B. Later Presidential Action May Establish Predecisionality, But Not the Deliberative Character of Every Record.

Predecisionality and deliberativeness are distinct. "It is not enough that a communication precede the adoption of an agency policy"; only portions that "reflect the give and take of the deliberative process may be withheld." *Pub. Citizen*, 598 F.3d at 875–76 (quoting *Jordan v. DOJ*, 591 F.2d 753, 774 (D.C. Cir. 1978)). Even if the sequence that OPM and the guidance's description of "interim recommendations" established the predecisional status of substantive agency recommendations, they do not establish the deliberative character of every spreadsheet, email, position-description file, or other record transmitted in connection with those recommendations.

*America First Legal Foundation v. Department of Agriculture*, does not resolve the broader issue here. That decision applied the broader presidential-communications privilege, which protects qualifying documents in their entirety and reaches final and postdecisional materials. 126 F.4th at 695. It also rested on detailed declarations explaining that the President specifically solicited the plans at issue and that his immediate advisers used them in presidential deliberations. *Id.* at 694–99.

OPM invokes the narrower deliberative-process privilege without providing a comparable account of the contents and functions of the materially different responsive records. *See* Def.'s Mot. for Summ. J. 11, Dkt. No. 21 (Def.'s Mot.); Def.'s Reply

5

2–4; Carrington Decl. ¶ 10. The defect is not merely that the records traveled through OPM rather than directly to the White House; protected presidential communications may travel through the chain of command. *Am. First*, 126 F.4th at 695. The defect is that Ms. Carrington describes the overall sequence without explaining which records or portions reveal the consultations underlying an agency recommendation, OPM's recommendation, or a presidential designation. *See* Carrington Decl. ¶¶ 9–11.

Nor does the President's continuing authority to alter Schedule Policy/Career establish the deliberative character or present sensitivity of every earlier record. *See* Def.'s Reply 3, 7. That authority may identify possible future deliberations. It does not show that every historical, superseded, acted-upon, or accompanying record was prepared for—or would reveal—the consultations underlying those future decisions. *See* Pl.'s Cross-Mot. 6–8, 12–14.

## C.    Revisions and Nonconcurrence Show That Deliberation Occurred, Not Which Records Reveal It.

Agency revisions and OPM's nonconcurrence with "a significant number" of recommendations support the inference that substantive deliberation occurred somewhere in the broader process. Carrington Decl. ¶ 9; Def.'s Reply 7. But Ms. Carrington does not explain what any revision changed or what any nonconcurrence addressed. The changes may have concerned the positions recommended, the supporting rationale or factual support, completeness, or an administrative correction. The declaration does not distinguish among those possibilities.

6

The *Vaughn* index adds sequence and document labels, not the missing functional account. Labels such as "initial list," "revised list," "email," and "other" do not disclose the withheld content or explain the record's role in the process. Carrington Decl. Ex. A, Dkt. No. 21-3 (Def.'s *Vaughn* Index). The index identifies some of the "who" and "where"—the sending agency, recipient, date, and transmission platform—but not the relevant "what" and "how." *Contrast id.*, *and* Def.'s Reply 8–9, *with Jud. Watch, Inc. v. DOJ*, 20 F.4th 49, 55–57 (D.C. Cir. 2021) (finding the agency's showing inadequate where it did not sufficiently describe the withheld content, the documents' role in the process, or the authors' and recipients' decisionmaking roles).

While selecting or organizing facts may itself reveal deliberative judgment, *see Mapother v. DOJ*, 3 F.3d 1533, 1538–39 (D.C. Cir. 1993), that principle does not create a blanket presumption covering every record and portion associated with the selection. OPM must establish the required functional nexus for the particular material withheld, *see Petroleum Info.*, 976 F.2d at 1434–36. It has shown that deliberation occurred; it has not shown that every responsive file reveals it.

## II.    OPM Has Not Shown That Disclosure of Every Withheld Record or Portion Would Cause Foreseeable Harm.

Even if withheld information were predecisional and deliberative, OPM would still have to separately show that disclosure "would harm an interest protected by" Exemption 5. *Leopold v. DOJ*, 94 F.4th 33, 37 (D.C. Cir. 2024) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). That requires a "focused and concrete" explanation connecting the particular information withheld to an identifiable harm. *Reps. Comm.*, 3

7

F.4th 350, 370 (D.C. Cir. 2021). An agency may proceed categorically, but only by grouping like records and independently demonstrating the harm for each meaningful category. *Id*. at 369. OPM instead applies one candor and public-confusion rationale to approximately 1,360 files from 74 agencies. Carrington Decl. ¶ 10.

### A.    Common Subject Matter Does Not Make the Responsive Records "Functionally Identical."

OPM argues that one harm explanation suffices because NTEU requested the same information from every agency and the responsive records are therefore "functionally identical." Def.'s Reply 12. But common subject matter or inclusion within one FOIA request does not establish functional identity. Categorical analysis requires "like records" and a demonstrated common harm. *Reps. Comm.*, 3 F.4th at 369–70. In *Emuwa v. Department of Homeland Security*, for example, the agency established that there were "no material differences" among four records that performed the same evaluative and recommendatory function. 113 F.4th 1009, 1017 (D.C. Cir. 2024). OPM makes no comparable showing here.

Ms. Carrington and the *Vaughn* index distinguish spreadsheets, emails, and files classified as "other"; initial and revised submissions; and records received on different dates and through different platforms. Carrington Decl. ¶ 8; Def.'s *Vaughn* Index. OPM does not explain the contents or functions of those categories or why their apparent differences do not affect the harm analysis. An email may contain substantive exchanges or may contain only transmission information; OPM does not say which. Some "other" files are identified as position descriptions, but OPM does

8

not explain whether they were created or modified for the review or how they functioned in the asserted deliberative process.

Nor does OPM describe the spreadsheets' fields. Paragraph 10 instead speaks generally of "privileged information," "recommendations," and "initial and revised draft lists," without connecting the asserted harm to an identified record type, portion, or procedural stage. Carrington Decl. ¶ 10. Counsel may explain the record evidence, but OPM's brief cannot supply facts about the records' undisclosed contents that are absent from the declaration and *Vaughn* index. *See* Fed. R. Civ. P. 56(c)(1). And those evidentiary submissions must describe the withheld content and its role in the asserted deliberative process with sufficient specificity. *See Jud. Watch*, 20 F.4th at 55–57.

Further, OPM's factual distinctions of NTEU's authorities, Def.'s Reply 9–12, do not answer the rule those cases apply: the agency must establish an evidentiary connection between the information withheld—or a meaningful category of like information—and the asserted harm.[1] OPM asserts that it would be "unrealistic" for the foreseeable harm to differ among agencies' submissions or among initial lists, revised lists, and supporting materials. Def.'s Reply 12. But that assertion assumes the proposition OPM must establish—that the grouped records are alike in the

---

[1] See *Nat'l Pub. Radio, Inc. v. DHS*, No. 20-2468, 2022 U.S. Dist. LEXIS 176411, at *7–8 (D.D.C. Sept. 28, 2022) (requiring an evidentiary connection between meaningful categories of withheld information and the asserted harm); *Ctr. for Investigative Reporting v. U.S. Customs & Border Prot.*, 436 F. Supp. 3d 90, 105–07 (D.D.C. 2019) (same); *Jud. Watch, Inc. v. Dep't of Com.*, 375 F. Supp. 3d 93, 99–100 (D.D.C. 2019) (same).

respects material to the asserted harm. *See Reps. Comm.*, 3 F.4th at 369. The fact that NTEU requested the same information from each agency does not show that the separately indexed lists, emails, position-description files, and other records contain the same information, served the same decisional function, or would produce the same chilling effect if disclosed. *See* Pl.'s Cross-Mot. 8–10. Without that showing, OPM cannot sustain withholding across the entire responsive universe through one undifferentiated harm rationale.

### B.    OPM Has Not Connected the Distinct Information Withheld to a Loss of Candor.

OPM repeats Ms. Carrington's prediction that agency and OPM employees would be less candid if they knew their submissions might become public. Def.'s Reply 8–10, 13; Carrington Decl. ¶ 10. But OPM must explain how disclosure of the particular information withheld would cause that result. *Reps. Comm.*, 3 F.4th at 369–70. The required and structured nature of the submissions does not foreclose a candor concern; mandatory submissions may still contain sensitive recommendations. It does, however, require OPM to identify the sensitive information and explain how its disclosure would reduce the content, completeness, or quality of future submissions. For example, disclosure of an official's evaluative reasoning may implicate candor differently from disclosure of an email that merely transmits a required attachment. Ms. Carrington does not describe the categories with enough specificity to distinguish those possibilities.

OPM invokes *Rudometkin v. United States* and argues that foreseeable harm is manifest from the records' sensitivity. Def.'s Reply 8–9, 12–13. But there, the

10

Court described manifest harm as a "rare" exception. 140 F.4th 480, 493 (D.C. Cir. 2025), *reh'g en banc denied,* 2025 U.S. Dist. LEXIS 19416 (D.C. Cir. Aug. 1, 2025). The records there concerned nominations, evaluations, and recommendations in the confidential selection of a single Chief Trial Judge. *Id.* at 493. Defined categories and supporting declarations made their evaluative purpose and sensitivity apparent. *Id.* at 492–94. Here, the responsive universe consists of approximately 1,360 files of different types from 74 agencies, and OPM's guidance made the personal characteristics of incumbents irrelevant. Jan. 27 Guidance 5. Some substantive recommendations may be sensitive. That does not make the harm from disclosure of every separately indexed email, position-description file, spreadsheet, or portion manifest.

OPM invokes *America First Legal Foundation v. U.S. DOJ*, 805 F. Supp. 3d 187, 214 (D.D.C. 2025), to argue that context may make foreseeable harm apparent. Def.'s Reply 13. But the court relied on detailed declarations identifying the withheld record, describing its predecisional legal analysis, and explaining how disclosure would chill prosecutorial candor. *Am. First,* 805 F. Supp. 3d at 213–14. OPM has not made a comparable showing for the spreadsheets, emails, position-description files, and other records grouped together here. Their common subject matter does not establish that every record or portion presents the same chilling risk.

OPM's other authorities likewise involved identified communications and specific explanations of how disclosure would impair future deliberations. *See* Def.'s Reply 8–9. None supports one undifferentiated harm rationale for materially

11

different records without showing that they are alike in the respects relevant to the asserted harm. *See Energy Pol'y Advocs. v. SEC*, 699 F. Supp. 3d 56, 65–67 (D.D.C. 2023); *Laws.' Comm. for C.R. v. OMB*, No. 18-645, 2023 U.S. Dist. LEXIS 84058, at *24–29 (D.D.C. May 12, 2023); *Machado Amadis v. Dep't of State*, 971 F.3d 364, 371 (D.C. Cir. 2020).

### C.    OPM Has Not Connected Its Public-Confusion Theory to Protected Deliberative Harm.

OPM also asserts that disclosure could cause the public to mistake an agency recommendation for the President's final determination. Def.'s Reply 13–14; Carrington Decl. ¶ 10. Public confusion, however, matters under Exemption 5 only when the predicted misunderstanding would impair protected deliberation; confusion standing alone is not an interest protected by the exemption. *Nat'l Ass'n of Minority Veterans v. U.S. Dep't of Veterans Affs.*, No. 21-1298, 2024 U.S. Dist. LEXIS 33017, at *22–24 (D.D.C. Feb. 27, 2024).

Ms. Carrington does not explain how public misunderstanding concerning each category of withheld information would inhibit future consultations or impair pending deliberations. Nor does OPM address whether the procedural status of a recommendation could be explained through labeling, contextual information, or targeted redaction. OPM recasts NTEU's position as asserting that public confusion is impossible. Def.'s Reply 13–14. The relevant question, however, is whether OPM has connected the risk posed by each category of withheld information to impairment of protected deliberation and explained why less extensive disclosure could not mitigate that risk. It has not shown why every file presents the same risk. OPM

12

does not establish that every responsive file contains a substantive list, that every recommendation reflected in the records remains under consideration, or that every accompanying record and portion would create the same misunderstanding.

*Juul Labs, Inc. v. FDA*, 731 F. Supp. 3d 46 (D.D.C. 2024), illustrates the showing required. FDA identified 20 review memoranda concerning one set of applications, *id.* at 54–58, submitted a supplemental declaration explaining that supervisors were actively reconsidering the same denial and might rely on the withheld analyses, and described how disclosure could distort that review and cause concrete consequences, *id.* at 75–78. The Court also confirmed the agency's account through in camera review. *Id.* at 72–73. OPM does not identify which records contain recommendations still under consideration, establish that each meaningful category is being used in current OPM or presidential deliberations, or explain how disclosure of each category would impair those deliberations.

The President's June 2026 executive order further exposes that gap. *See* Exec. Order No. 14410, 91 Fed. Reg. 34,893 (June 3, 2026). Ms. Carrington's declaration treats presidential action as purely prospective, and yet OPM now relies on both completed designations and possible future changes to justify blanket witholding. Carrington Decl. ¶ 10; Def.'s Reply 3, 14. Nevertheless, OPM declined to distinguish records concerning positions included in the order, positions omitted or rejected, earlier or revised iterations, and recommendations that may remain under consideration. OPM thus has not shown why those potentially different procedural postures present the same present harm.

13

### III.   OPM Has Not Shown That It May Withhold Every Responsive Record in Full.

Even if information identifying recommended positions or explaining the agencies' recommendations is privileged, OPM must release "[a]ny reasonably segregable portion" after exempt information is deleted. 5 U.S.C. § 552(b); *see also id.* § 552(a)(8)(A)(ii). Under *Leopold* and *Rudometkin*, the analysis also must consider whether information falling within an exemption can nevertheless be segregated and released without causing foreseeable harm. *Leopold*, 94 F.4th at 37; *Rudometkin*, 140 F.4th at 494. The Court must make an express segregability finding on an adequate record. *Army Times Publ'g Co. v. Dep't of the Air Force*, 998 F.2d 1067, 1071–72 (D.C. Cir. 1993); *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). Ms. Carrington's one-sentence conclusion does not permit that finding.

### A.   Counsel's Description of the Lists Does Not Establish That Every Responsive File Is Nonsegregable.

Ms. Carrington's entire segregability analysis states that no portion can be released because each agency's "initial and revised selections" reflects protected deliberation. Carrington Decl. ¶ 11. She does not describe the contents of the separately indexed emails or "other" files, identify the spreadsheets' fields, attest to a line-by-line review, or state that OPM considered whether information otherwise within Exemption 5 could be disclosed without foreseeable harm.

OPM's assertion that "the lists contained no other information" appears only in counsel's reply brief. *Contrast* Carrington Decl. ¶ 11, *with* Def.'s Reply 2, 14. And, as noted above, counsel may explain the significance of record evidence but cannot

14

establish undisclosed record contents or cure missing declaration testimony. *See* Fed. R. Civ. P. 56(c)(1); *Jud. Watch*, 20 F.4th at 55–57. But even accepting counsel's description, it addresses only "the lists." It does not establish the contents or non-segregability of the separately indexed emails, position-description files, and other records within the approximately 1,360-file responsive universe.

**B.    Deliberative Position Selection Does Not Render Every Associated Record Nonsegregable.**

The identity of a recommended position and an agency's supporting rationale may reveal evaluative judgment. *See Mapother*, 3 F.3d at 1538–39; *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 513–14 (D.C. Cir. 2011); *see also* Def.'s Reply 6–7 (arguing that agencies exercised judgment in selecting and revising positions recommended for transfer). But that principle does not establish the nonsegregability of every associated fact, source document, attachment, communication, or administrative field. An email may contain substantive discussion or may merely transmit another record; OPM does not say which. OPM does not explain whether the separately indexed position-description files were created or modified for this review or how their contents reveal deliberation. A spreadsheet may contain only protected selection information, or it may contain other intelligible fields; OPM does not describe them. OPM thus fails to explain why no intelligible portion of the existing records can be separated and disclosed.

Further, OPM's efforts to distinguish *Army Times* and *Trans-Pacific* do not cure this deficiency. *See* Def.'s Reply 15–16. *Army Times* remanded because the affidavits and *Vaughn* submission did not permit the Court to distinguish protected

15

material from potentially segregable information. 998 F.2d at 1071–72. *Trans-Pacific* likewise requires an independent segregability finding on an adequate record. 177 F.3d at 1028. OPM also invokes *Mead Data Center, Inc. v. U.S. Department of the Air Force* for the rule that FOIA does not require an agency to reconstruct new records or release meaningless fragments. Def.'s Mot. 15 (quoting 566 F.2d 242, 261 n.55 (D.C. Cir. 1977). But that rule is beside the point: NTEU seeks only reasonably segregable, intelligible portions of existing records, and neither Ms. Carrington's declaration nor OPM's *Vaughn* submission establishes that no such portions exist.

### C.    *Rudometkin* Confirms That OPM's Segregability Showing Is Insufficient.

PM invokes *Rudometkin* to support its foreseeable-harm showing, *see* Def.'s Reply 8–9, 12, but that decision's segregability holding confirms the deficiency here. Although the D.C. Circuit accepted that the records were privileged and found foreseeable harm manifest, it reversed summary judgment because the government had not considered whether information within exempt material could be released without causing that harm. 140 F.4th at 493–95. That was so even though the agency had organized the records into defined categories, described their contents, conducted a line-by-line review, and released nonexempt portions. *Id.* at 494–95.

Here, OPM has not made even the showing found inadequate in *Rudometkin*. Ms. Carrington does not attest to a line-by-line review, analyze segregability by meaningful record category, or state that OPM considered whether information falling within Exemption 5 could be released without foreseeable harm. She instead restates the privilege conclusion that the agencies' "initial and revised selections"

16

reflect deliberation. Carrington Decl. ¶ 11. That is not a complete segregability analysis.

Nor does the *Vaughn* index cure those omissions. It identifies materially different document types but provides no portion-level information permitting the Court to determine what material is privileged, what harm disclosure would cause, or what intelligible portions remain releasable. *See* Def.'s *Vaughn* Index The record therefore cannot support withholding every responsive file in full. Alternatively, the Court may conduct in camera review to determine whether particular records or portions are privileged, foreseeably harmful to disclose, and reasonably segregable.

## <u>CONCLUSION</u>

The Court should deny OPM's motion, and grant NTEU's cross-motion.

August 5, 2026                                     Respectfully submitted,

PARAS N. SHAH
D.C. Bar No. 983881
General Counsel

ALLISON C. GILES
D.C. Bar No. 439705
Associate General Counsel

*/s/Thaxton Blaise Springfield*
THAXTON BLAISE SPRINGFIELD
D.C. Bar No. 90019358
Assistant Counsel
NATIONAL TREASURY
EMPLOYEES UNION
800 K Street, N.W., Suite 1000
Washington, D.C. 20001
(202) 572-5505

Counsel for Plaintiff NTEU

17